Filed 9/22/14

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| MANUEL HOLGUIN et al., | D059983 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2008-00060705-CU-BC-NC) |
| DISH NETWORK LLC et al., | |
| Defendants and Appellants. | |

APPEALS from a judgment and orders of the Superior Court of San Diego County, William S. Dato, Judge.  Affirmed.


Miller & Steele and Robert M. Steele for Plaintiffs and Appellants.

Selman Breitman, Jennifer Friend and William J. Mall for Defendants and Appellants.

Defendants DISH Network LLC (DISH), AT&T Corporation (AT&T), and EchoStar Satellite LLC (EchoStar) appeal the judgment and two postjudgment orders in favor of plaintiffs Manuel and Deborah Holguin (the Holguins) following a jury trial on the Holguins' complaint for breach of contract, negligence, and other torts.  DISH, AT&T, and EchoStar contend that the trial court erred by denying their motion for

judgment notwithstanding the verdict and for a new trial and by granting contractual attorney fees to the Holguins. The Holguins cross-appeal, contending that the court abused its discretion in making an award of attorney fees that allegedly does not fully compensate the Holguins' attorneys. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Two AT&T sales agents visited the Holguins' home in November 2006. The sales agents offered the Holguins telecommunications services from AT&T and certain affiliates. The Holguins ordered a bundle consisting of telephone, Internet, and satellite television services. Deborah Holguin signed a "California Order Form Worksheet" (Order Form), which specified the types of telephone, Internet, and satellite television services that the Holguins had ordered. The Order Form identified the name of the "Authorized AT&T Sales Agent" who took the Holguins' order and further identified "AT&T California," at an address in San Diego, as the entity to which the Holguins would need to give notice should they decide to cancel their order. The AT&T sales agents scheduled a date and time for installation of the equipment necessary for the Holguins' satellite television service. The Order Form identified the provider of the satellite television service as "AT&T | DISH Network."

Several weeks later, a DISH technician arrived at the Holguins' home to install the satellite dish and related equipment. The technician provided the Holguins with a document entitled "DISH Network Service L.L.C. Service Agreement" (Service Agreement) that memorialized the installation. The Service Agreement identified the work that the technician performed, the specific equipment installed, and the date and

2

time of the installation. Deborah also signed a "Digital Home Advantage Promotion Agreement" (Promotion Agreement) that recited the terms and conditions of a sales promotion governing the Holguins' satellite television order. At the time of installation, the technician also provided Deborah Holguin with a copy of another document, the Residential Customer Agreement, which was identified in the Service Agreement and incorporated by reference into the Promotion Agreement. The Residential Customer Agreement describes the terms and conditions of the Holguins' satellite television service.

The Promotion Agreement and the Residential Customer Agreement identify EchoStar as the party contracting with the Holguins. DISH is the successor entity to EchoStar. DISH has a subsidiary, DISH Network California Service Corporation (DISH California), which employs DISH's field technicians in San Diego. At the time of the Holguins' installation, those field technicians had business cards which identified DISH Network Service, LLC (DISH Network Service) as their employer and EchoStar as their e-mail provider. The Holguins' technician was working on behalf of DISH when he installed their satellite television equipment.

The Holguins' installation did not go as planned. The DISH technician drilled through a sewer pipe in the Holguins' wall, fed a satellite television cable through it, and patched the wall without repairing the pipe. The Holguins did not discover the improper installation until 14 months later. In the intervening time, the damaged pipe leaked sewer

3

water into the surrounding wall cavity and caused mold buildup in the Holguins' home. As a result, the Holguins suffered respiratory problems and other health issues.[1]

After they discovered the improper installation, the Holguins contacted either AT&T or DISH using the telephone number on their telecommunications bill. DISH sent a representative, who inspected the flawed installation and said that his company would take care of the damage. Concerned for their health, the Holguins moved out of their house, first to Manuel Holguin's parents and then to a series of hotels and other living arrangements. A DISH representative told the Holguins that DISH would reimburse them if they did not want to live in their house pending repair work, but the Holguins never received reimbursement.

DISH hired a general contractor, San Diego Painting, to repair the damage. San Diego Painting, in turn, engaged a mold remediator to clean the area around the damaged pipe. The mold remediator set up a containment area, removed the affected drywall surrounding the pipe, and cleaned the residue from the sewer water leak. After the remediator's work was complete, a testing firm reported that mold levels were acceptable in the affected area. However, following that report, San Diego Painting attempted to patch up the Holguins' wall without removing the satellite television line or repairing the pipe itself. For this and other reasons, the Holguins became concerned that San Diego

---

1  Approximately one month after this installation, a DISH technician came to the Holguins' home to configure the Holguins' VCR and DVD player. Manuel Holguin signed another Service Agreement on a form identical in all material respects to the earlier Service Agreement signed by Deborah Holguin at the time of the first installation.

Painting was not handling the repair correctly. The Holguins contacted DISH about changing contractors, but no help was forthcoming.

The Holguins retained an attorney and an industrial hygienist, who told the Holguins that there was still extensive mold growth even after the remediator's work. In particular, there was evidence of mold growth in other areas of the Holguins' home, in addition to the area immediately surrounding the damaged pipe. The Holguins asked DISH to complete the remediation and repair, but DISH did not do any additional work. The Holguins eventually hired their own contractor, who performed the remediation and repair at the Holguins' expense.

The Holguins filed suit against DISH, DISH California, EchoStar, AT&T, San Diego Painting, and the two subcontractors engaged by San Diego Painting: mold remediator Michael & Lu Corporation (ServPro) and testing firm H.M. Pitt Labs, Inc. (Pitt). The Holguins alleged causes of action for breach of contract, negligence, trespass, concealment, private nuisance, intentional misrepresentation, and intentional infliction of emotional distress arising from the faulty installation and repair efforts. The Holguins demanded compensatory and punitive damages, as well as attorney fees, costs, and other relief.

The court held a three-week jury trial in December 2010. DISH California admitted that the Holguins' satellite television equipment was negligently installed, but it denied that it was responsible for damages beyond the cost of repairing the pipe and certain incidentals. Aside from DISH California's admission of negligence, the defendants denied all of the Holguins' claims.

5

At trial, the court considered and granted a number of motions for nonsuit, including DISH California's motion on the Holguins' breach of contract cause of action. DISH California argued that it could not be held liable for breach of contract because it was not named in any of the agreements at issue. The court agreed and allowed the Holguins to proceed with their breach of contract claims against AT&T, DISH, and EchoStar only.

The Holguins' breach of contract claims were the subject of particular attention at trial, in part because of an attorney fees provision in the Residential Customer Agreement. During the preparation of jury instructions, the Holguins argued that the Residential Customer Agreement, along with the Order Form, Service Agreements, and Promotion Agreement, comprised a single contract between the Holguins and AT&T, DISH, and EchoStar. The Holguins further argued that the contract contained an implied term requiring proper installation of the Holguins' satellite dish and related equipment. AT&T, DISH, and EchoStar disagreed with the latter argument, contending that the Residential Customer Agreement did not deal with installation and instruction on an implied term was improper. The court agreed with the Holguins. Therefore, in addition to instructions on the elements of the Holguins' breach of contract cause of action, which was submitted to the jury, the court gave the following instruction: "The court has determined that the contract entered into by plaintiffs included an implied term that the satellite dish and related equipment would be properly installed in their residence."

The jury found AT&T, DISH, and EchoStar liable for breach of contract and private nuisance. The jury also found DISH California liable for private nuisance. The

6

jury determined that AT&T, DISH, DISH California, EchoStar, San Diego Painting, and mold remediator ServPro were negligent, though it decided that ServPro's negligence was not a substantial factor in causing harm to the Holguins. The jury also determined that the Holguins were negligent, but their own negligence was also not a substantial factor in causing their harm. The jury awarded a total of $109,000 in compensatory damages, which it apportioned among AT&T, DISH, DISH California, EchoStar, and San Diego Painting according to their relative faults. The award consisted of $54,000 in economic damages and $55,000 in noneconomic damages. The court entered judgment accordingly.[2]

Following entry of judgment, AT&T, DISH, and EchoStar moved for a new trial on the Holguins' breach of contract cause of action or, in the alternative, for an order partially vacating the verdict and partial judgment notwithstanding the verdict.[3] They argued that the court erred in instructing the jury that proper installation of the Holguins' satellite television equipment was an implied contractual term, that the court erred in referring to a singular "contract" in other jury instructions, and that no evidence was presented to support a breach of contract verdict against AT&T, DISH, and EchoStar. They contended that the only contracts in evidence that dealt with installation were the

---

[2]     The jury awarded $13,500 of the economic damages against San Diego Painting. Following a motion by San Diego Painting for new trial or judgment notwithstanding the verdict, the court conditionally ordered a new trial on damages if the Holguins did not accept a reduction in the jury's award against San Diego Painting to $4,500.

[3]     AT&T, DISH, and EchoStar also moved for a partial new trial or judgment notwithstanding the verdict on the Holguins' negligence and nuisance causes of action, which the court denied. The grounds for this motion are not relevant to this appeal.

Service Agreements, which they argued only DISH Network Service was party to. The Holguins opposed, arguing that the defendants had improperly concealed the alleged separate existence of DISH Network Service and that, in any event, its separate existence was contradicted by the evidence at trial. The Holguins argued that they had a single contract with AT&T, DISH, and EchoStar, which was evidenced by separate written instruments: the Order Form, the Service Agreements, and the Residential Customer Agreement. On this basis, the Holguins argued that the court's jury instructions were proper and the jury's verdict was supported by the evidence. The court denied AT&T, DISH, and EchoStar's motion.

The Holguins then moved for recovery of their attorney fees on the grounds that a unilateral attorney fees clause in the Residential Customer Agreement entitled them to attorney fees pursuant to Civil Code section 1717. The Holguins' attorneys claimed that they incurred approximately $425,000 in fees in connection with the matter and that they were entitled to an enhancement of 1.5 times this amount. The grounds for their claimed enhancement included the contingent nature of their fee arrangement with the Holguins, the complexity of the matter, and the excellent results obtained. AT&T, DISH, and EchoStar opposed, arguing that the Residential Customer Agreement was governed by Colorado law and thus Civil Code section 1717 did not apply. They further argued that the jury's verdict did not establish that the Holguins were awarded any damages for their breach of contract cause of action, even if attorney fees were possible under the Residential Customer Agreement. As to the amount of attorney fees, AT&T, DISH, and

8

EchoStar argued that it should be substantially reduced for various reasons and that no enhancement was justified.

After ordering further briefing on the details of the Holguins' fee arrangement with their attorneys, the court granted the Holguins' motion for fees in the amount of $180,648. The court found that the Holguins were entitled to a fee award, but that the claimed fees should be reduced. The two major grounds for such reduction were (1) excessive fees incurred as a result of a medical issue suffered by the Holguins' initial attorney, which caused a trial continuance, association of new lead counsel, and substantial duplicative work; and (2) apportionment of fees between the Holguins' breach of contract and tort causes of action. The court further found that no enhancement was warranted. The court noted that their contingent fee arrangement with the Holguins would have entitled their attorneys to only $16,200 if based on their contract damages (or $38,200 if based on the entire jury award). The court stated, "The fact that plaintiffs' percentage contingent fee contract obligated them to pay a substantially smaller fee than counsel's lodestar is a compelling basis not to award an enhanced fee."

## DISCUSSION

### I

### A

We first address AT&T, DISH, and EchoStar's claim that the court erred in instructing the jury on the Holguins' breach of contract cause of action. We independently review a claim of instructional error, as the underlying question is one of law, involving the determination of applicable legal principles. (*People v. Alvarez* (1996)

9

14 Cal.4th 155, 217; see also *National Medical Transportation Network v. Deloitte & Touche* (1998) 62 Cal.App.4th 412, 427.)

AT&T, DISH, and EchoStar argue that the trial court erred by instructing the jury using the singular "contract" when, in their view, at least five separate contracts were formed when the Holguins ordered the bundle of telecommunications services at issue here and requested installation of satellite television equipment. For example, the court instructed the jury in part as follows: "Plaintiffs claim that they and AT&T, Dish Network, and EchoStar entered into *a contract*. To prove that *a contract* was created, the plaintiffs must prove . . . ." (Italics added.) This singular use of the word "contract" appears several times in the court's breach of contract instructions.

### B

The Holguins argue, as an initial matter, that AT&T, DISH, and EchoStar have forfeited any claim of error because they did not object to the singular use of "contract" in the jury instructions or request an instruction consistent with their argument that multiple contracts exist. We agree. " 'In a civil case, each of the parties must propose complete and comprehensive instructions in accordance with his theory of the litigation; if the parties do not do so, the court has no duty to instruct on its own motion.' " (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 950-951.) " 'Where, as here, "the court gives an instruction correct in law, but the party complains that it is too general, lacks clarity, or is incomplete, he must request *the additional or qualifying instruction in order to have the error reviewed*." [Citations.]' [Citation.] [A party's] failure to request any different

10

instructions means he may not argue on appeal the trial court should have instructed differently." (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1131.)

Here, AT&T, DISH, and EchoStar have not shown that they objected to the use of the singular "contract" in the trial court's jury instructions or that they requested any alternative. In their briefing, AT&T, DISH, and EchoStar reference two trial excerpts where they contend that they requested a more elaborate instruction. The two excerpts, however, do not discuss the singular use of the word contract. Instead, they are directed to the separate issue of the court's instruction on the implied contractual term of proper installation (see pt. II, *post*). In fact, in the excerpted arguments, the attorney for AT&T, DISH, and EchoStar repeatedly references "a contract" or "the contract" in the singular. Nowhere do AT&T, DISH, and EchoStar request that the jury instructions be modified to reflect the possibility of multiple contracts. AT&T, DISH, and EchoStar have therefore forfeited any assignment of error on this ground. (*Metcalf v. County of San Joaquin, supra*, 42 Cal.4th at p. 1131.)

C

Even assuming that AT&T, DISH, and EchoStar had not forfeited this argument on appeal, we would conclude that the trial court's use of the singular "contract" was not erroneous.[4] "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." (Civ. Code,

---

[4]  In light of our conclusion, we need not address the Holguins' additional threshold argument that the trial court's instructions cannot reasonably be interpreted as instructing the jury that the various written instruments at issue may be considered to be a single contract.

11

§ 1642.) "The language of [Civil Code section 1642] has been somewhat broadened by construing it as a declaration of common law principles." (1 Witkin, Summary of Cal. Law (2005) Contracts, § 747, p. 835.) " 'It is a general rule that several papers relating to the same subject-matter and executed as parts of substantially one transaction, are to be construed together as one contract [citations].' " (*Symonds v. Sherman* (1933) 219 Cal. 249, 253; see also *Mayers v. Loew's, Inc.* (1950) 35 Cal.2d 822, 827 [" 'Where two or more written instruments are executed contemporaneously, with reference to the other, for the purpose of attaining a preconceived object, they must all be construed together, and effect given if possible to the purpose to be accomplished.' "].)

"The general principle of joint consideration of several instruments as one agreement is applicable whether they expressly refer to each other [citations], or it appears from extrinsic evidence that they were executed as a part of one transaction." (*Harm v. Frasher* (1960) 181 Cal.App.2d 405, 413 (*Harm*).) Here, both such circumstances apply and support the trial court's reference to a singular "contract" in its jury instructions.

The Residential Customer Agreement was expressly incorporated by reference into the Promotion Agreement. The Residential Customer Agreement was also referenced in the Service Agreements, which required the Holguins to "acknowledge receipt of and agree that [they] have read, understand and agree to be bound by the terms and conditions of the Residential Customer Agreement . . . ." The Order Form does not reference the other documents by name, but it was the initiating document for the Holguins' transaction. It memorializes the Holguins' order for satellite television service

12

through "AT&T | DISH Network," notes that the Holguins would like a digital video recorder from "AT&T | DISH Network," and warns the Holguins that "[i]nstallation charges may apply."

Moreover, the evidence presented at trial shows that the Order Form, Residential Customer Agreement, Service Agreements, and Promotion Agreement were part of a single transaction. The Holguins initiated their order for the entire bundle of telecommunications services with a single document, the Order Form, which identified satellite television service as one of many services offered through the AT&T sales agents. The Order Form reflected that the satellite television service was offered by "AT&T | DISH Network," and the installation of the Holguins' satellite television equipment was scheduled by the AT&T sales agents at the same time as the Holguins executed the Order Form. At that installation, a DISH technician provided the Holguins with the Residential Customer Agreement, the Service Agreement, and Promotion Agreement.

We therefore disagree with AT&T, DISH and EchoStar that the written instruments here are not so interrelated as to be considered one contract. (See *Reid v. Johnson* (1948) 85 Cal.App.2d 112, 116.) Four of the agreements here (the Residential Customer Agreement, the Service Agreements, and the Promotion Agreement) expressly reference or incorporate one another. The last agreement, the Order Form, initiated the Holguins' order for the satellite television service that is the subject of the other agreements, and the Order Form purported to constitute a binding agreement for such service.

13

The fact that each of the written instruments had slightly different (though overlapping) areas of concern does not mean that they are not interrelated, as AT&T, DISH, and EchoStar suggest. (*Harm, supra*, 181 Cal.App.2d at p. 415 ["The general subject matter of the transaction may be identified by referring to all of the instruments executed in connection therewith, even though the subject matter specifically described in each instrument may differ."].) We likewise find no support in the record for the assertion that the written instruments are "antagonistic" and thus should not be read together. (See *Ucovich v. Basile* (1938) 26 Cal.App.2d 272, 278.) The Residential Customer Agreement, the Service Agreements, and the Promotion Agreement expressly reference or incorporate one another, and AT&T, DISH, and EchoStar make no effort to show that the Order Form is antagonistic to any of the other writings. The court's use of the singular "contract" also did not make AT&T, DISH, and EchoStar necessarily liable for every obligation contained in any of the writings. (See *Harm,* at pp. 416-417 [in series of written instruments considered as one contract, counterparties were obligated to sell different business interests].) The Holguins were still required to prove their breach of contract claim as to each defendant, and the court's instructions here correctly informed the jury of the Holguins' burden in this regard.

AT&T, DISH, and EchoStar further argue that the written instruments at issue should not be considered as one contract because, although one of the Holguins is a party to each, the counterparties are different. Although Civil Code section 1642 references the "same parties," the common law rule is not so limited. (*Harm, supra*, 181 Cal.App.2d at p. 415.) Where, as here, the written instruments are all part of the same transaction, they

14

may be considered together even when the counterparties to each instrument are different. (*Ibid.*; see also *Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1675.) Moreover, the record reflects substantial interrelationships between and among the counterparties here. At trial, without objection from AT&T, DISH, or EchoStar, there were repeated references in testimony to the parties collectively, e.g., "the DISH AT&T company" or simply "DISH AT&T." Individuals associated with DISH described their employer alternately as DISH or DISH California, though they stated that they received their paychecks from EchoStar. At the time of the Holguins' satellite television installation, the DISH technician's e-mail was provided through EchoStar. Although a DISH witness testified at trial that DISH was a subdivision of EchoStar, DISH stated in interrogatory responses that DISH is the successor entity of EchoStar. EchoStar is the counterparty referenced in the Residential Customer Agreement and the Promotion Agreement. DISH Network Service, the apparent counterparty to the Service Agreements, shares the same address as DISH California, which is a DISH subsidiary. DISH California admitted responsibility for the negligent installation at trial, though DISH Network Service is identified on the Service Agreements memorializing the Holguins' installations. The Order Form identifies satellite television service under the heading "AT&T | DISH Network," and AT&T agents scheduled the DISH equipment installation. In light of these facts, AT&T, DISH, and EchoStar have not shown that the trial court's reference to a singular contract was error.[5]

---

[5]     AT&T, DISH, and EchoStar state, in passing, that "[a]t the very least, it is a question of fact properly left to a jury whether multiple contracts are intended to be

AT&T, DISH, and EchoStar argue that referring to a singular "contract" is inconsistent with the parties' intent. (Civ. Code, § 1636.) We disagree. The Holguins ordered a bundle of telecommunications services, which was initiated by a single document, the Order Form. The remaining written instruments in evidence expressly reference or incorporate each other and have, as their counterparties, a number of related corporate entities. The evidence shows that the Holguins' order was offered to them as a single transaction and consequently handled by all parties as such. The trial court did not err in describing the Holguins' contract governing that transaction in the singular.

II

As a further ground for reversal, AT&T, DISH, and EchoStar contend that the trial court erred in interpreting the Holguins' contract to contain an implied term requiring the Holguins' satellite television equipment to be properly installed. At the Holguins' request, the court instructed the jury on the implied term as follows: "The court has

elements of a single transaction." They do not offer any legal analysis or argument in support of this general assertion, however, and they do not explain why that assertion leads to reversal under the circumstances here. We may thus properly consider their argument waived. " 'Appellate briefs must provide argument and legal authority for the positions taken. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' [Citation.] 'We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' " (*Cahill v. San Diego Gas & Electric Co*. (2011) 194 Cal.App.4th 939, 956.) Moreover, as discussed *ante*, AT&T, DISH, and EchoStar did not raise this alleged error in the trial court so it is waived or forfeited on appeal for that reason as well. (*Avalos v. Perez* (2011) 196 Cal.App.4th 773, 776 ["As a general rule, a claim of error will be deemed to have been forfeited when a party fails to bring the error to the trial court's attention by timely motion or objection."].)

determined that the contract entered into by plaintiffs included an implied term that the satellite dish and related equipment would be properly installed in their residence."

"The interpretation of a written instrument, even though it involves what might properly be called questions of fact [citation], is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect." (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.) "Accordingly, '[a]n appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citations] or a determination has been made upon incompetent evidence [citation].' " (*Ibid.*) The parties agree that de novo review is the proper standard to be applied here.

AT&T, DISH, and EchoStar are correct that a written contact is generally limited to its terms. "A contract extends only to those things which it appears the parties intended to contract. Our function is to determine what, in terms and substance, is contained in the contract, not to insert what has been omitted. We do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there." (*Vons Companies, Inc. v. United States Fire Insurance Co.* (2000) 78 Cal.App.4th 52, 59-60; see also Civ. Code, § 1648 ["However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."].)

However, AT&T, DISH, and EchoStar do not address the well-settled principle that express contractual terms give rise to implied duties, violations of which may

17

themselves constitute breaches of contract.  " 'Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract.'  The rule which imposes this duty is of universal application as to all persons who by contract undertake professional or other business engagements requiring the exercise of care, skill and knowledge; the obligation is implied by law and need not be stated in the agreement [citation]."  (*Roscoe Moss Co. v. Jenkins* (1942) 55 Cal.App.2d 369, 376; see also *North American Chemical Co. v. Superior Court* (1997) 59 Cal.App.4th 764, 774.)

Here, each of the written instruments at issue contemplated installation of satellite television equipment.  The Order Form reflected the Holguins' choice of an "AT&T | DISH Network" satellite television package, identified the Holguins' desire for satellite television equipment, and prompted the installation appointment itself.  The Service Agreement memorializes the installation and notes the equipment installed.  The Promotion Agreement expressly references "all equipment provided to you under this Agreement," and the Residential Customer Agreement contains lengthy sections addressing "EQUIPMENT" and "LEASED EQUIPMENT."[6]  The Residential Customer

---

6      AT&T, DISH, and EchoStar argue that the Residential Customer Agreement "exclude[s] . . . equipment installation from [its] subject matter."  However, they do not identify any portion of the agreement that reflects such an exclusion.  We are not required to search the Residential Customer Agreement to determine whether some portion supports the proposition advanced by AT&T, DISH, and EchoStar.  (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738.)  Moreover, to the extent AT&T, DISH, and EchoStar are relying on the warranty limitations referenced elsewhere in their briefing, we would find such an interpretation unsupported and unpersuasive.

Agreement notes that "[y]ou shall notify us promptly of any defect in, damage to, or accident involving your leased Equipment. *All maintenance and repair of such Equipment shall be performed by us or our designee(s)*." (Italics added.) Since an object of these instruments and of the entire transaction was to provide the Holguins with satellite television equipment (so that they would subscribe to satellite television service), we see no error in identifying an implied contractual term requiring that such equipment be properly installed. (*El Escorial Owners' Assn. v. DLC Plastering, Inc.* (2007) 154 Cal.App.4th 1337, 1358.) In light of our conclusion, we need not address the Holguins' alternative arguments that AT&T, DISH, and EchoStar waived their ability to assert error by failing to discuss all relevant evidence or that AT&T, DISH, and EchoStar have not adequately demonstrated prejudice.

### III

AT&T, DISH, and EchoStar further contend that the court erred in denying their motion for partial judgment notwithstanding the verdict or new trial on the Holguins' breach of contract claim because there was insufficient evidence to support the jury's verdict against AT&T, DISH, and EchoStar.

" ' "A motion for judgment notwithstanding the verdict of a jury may properly be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict. If there is any substantial evidence, or reasonable inferences to be drawn therefrom, in support of the verdict, the motion should be denied." ' " (*Clemmer v. Hartford Ins. Co.* (1978) 22 Cal.3d 865, 878.) Similarly, "we can reverse the denial of a new trial motion

19

based on insufficiency of the evidence . . . only if there is no substantial conflict in the evidence and the evidence compels the conclusion that the motion should have been granted." (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 752.)

AT&T, DISH, and EchoStar take issue with these familiar standards. They argue that de novo review is appropriate here because their motion in the trial court challenged the "legal basis" for the jury's verdict. (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 284 ["Here, however, the issues presented deal solely with interpretation of a statute and application of statutory language to the undisputed facts. Review of such issues takes place de novo."].) The Holguins counter that substantial evidence review is appropriate because contract formation and breach are questions of fact, not legal issues.

The parties' dispute partially stems from a lack of clarity in AT&T, DISH, and EchoStar's arguments. In their opening brief, AT&T, DISH, and EchoStar claim that "[t]he Holguins simply offered no evidence at trial of any independent breach of contract" by AT&T, DISH, and EchoStar. AT&T, DISH, and EchoStar assert that the Holguins admitted that AT&T, DISH, and EchoStar could only be found vicariously liable for the acts of DISH California and then proceed to explain their view that vicarious liability was inconsistent with the jury's verdict.[7] AT&T, DISH, and EchoStar do not attempt to show that the jury's verdict was unsupported by the evidence in light of the jury instructions

[7]    As support for the Holguins' alleged admission, AT&T, DISH, and EchoStar cite only their own posttrial brief.

20

actually given at trial. On reply, AT&T, DISH, and EchoStar appear to suggest that their claim of insufficiency of the evidence relies on their claims of legal error in the court's jury instructions.

We agree that AT&T, DISH, and EchoStar's claims of error in the court's jury instructions present legal questions that are properly reviewed de novo. (*Trujillo v. North County Transit Dist., supra*, 63 Cal.App.4th at p. 284; *Westamerica Bank v. MBG Industries, Inc.* (2007) 158 Cal.App.4th 109, 130.) The alleged legal errors consist of the trial court's use of the singular "contract" in its jury instructions and its interpretation of the Holguins' contract as including an implied term of proper installation of the Holguins' satellite equipment. We have already addressed and rejected these alleged errors under the appropriate standard of review in parts I and II *ante*, and we need not address them again here.

Setting aside these claims of legal error, AT&T, DISH, and EchoStar's further assertion that there was no "legal basis" for them to be held liable for breach of contract presents a question of evidentiary sufficiency. There is no legal question for this court to decide; the only question is whether the evidence presented was sufficient to sustain the jury's verdict against AT&T, DISH, and EchoStar on the breach of contract cause of action.

" 'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' " (*Foreman & Clark Corp. v.*

21

*Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman & Clark Corp.*).)  "An appellate court ' "must

*presume* that the record contains evidence to support every finding of fact . . . ." '

[Citations.]  It is the appellant's burden . . . to identify and establish deficiencies in the

evidence.  [Citation.]  This burden is a 'daunting' one." (*Huong Que, Inc. v. Luu* (2007)

150 Cal.App.4th 400, 409.)  "Accordingly, if, as defendants here contend, 'some

particular issue of fact is not sustained, they are required to set forth in their brief *all* the

material evidence on the point and *not merely their own evidence*.  Unless this is done the

error is deemed to be waived.'  (Italics added.)" (*Foreman & Clark Corp.,* at p. 881.)

AT&T, DISH, and EchoStar have not carried their burden.  Their discussion

centers on the legal errors identified above and on the potential for vicarious liability.

They do not set forth all material evidence relating to their contentions, and they do not

attempt to analyze the evidence presented at trial in light of the jury instructions actually

given.[8] (*Foreman & Clark Corp., supra*, 3 Cal.3d at p. 881; *Brockey v. Moore* (2003)

107 Cal.App.4th 86, 96-97.)  For example, AT&T, DISH, and EchoStar do not assess

whether the evidence supports a finding of breach of the implied contractual term

regarding proper installation.  Nor do they discuss or explain the interrelationships, which

are substantial, between and among the various corporate entities involved in the

---

[8]     AT&T, DISH, and EchoStar claim that they have satisfied their burden because
they "have designated the reporter's transcript from the trial, as well as the pertinent briefs
in the appendix."  They are incorrect.  An appellant's responsibility to provide an
adequate *record* on appeal is separate from, and in addition to, its responsibility to fairly
and comprehensively summarize *in its opening brief* all of the material evidence bearing
on its contention that substantial evidence is lacking on a given issue.  (Compare *Aguilar
v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132 [adequacy of the record] with
*Foreman & Clark Corp., supra*, 3 Cal.3d at p. 881 [adequacy of an appellant's brief].)

Holguins' transaction. Because we do not agree that AT&T, DISH, and EchoStar have shown any legal error, and because AT&T, DISH, and EchoStar have not otherwise shown the absence of evidence supporting the jury's verdict, we find no error in the trial court's order denying their motion for judgment notwithstanding the verdict or new trial. (*Clemmer v. Hartford Ins. Co., supra*, 22 Cal.3d at p. 878; *Fassberg Construction Co. v. Housing Authority of City of Los Angeles, supra*, 152 Cal.App.4th at p. 752.)

IV

AT&T, DISH, and EchoStar also challenge the court's posttrial order awarding attorney fees to the Holguins based on alleged ambiguity in the jury's verdict. They contend that it is unclear whether the jury awarded the Holguins damages for breach of contract and, in the absence of such an award, the Holguins are not entitled to attorney fees under Civil Code section 1717.

The special verdict returned by the jury addresses the elements of the Holguins' breach of contract cause of action first. The jury found for the Holguins on each element, including making a finding that the Holguins were harmed by AT&T, DISH, and EchoStar's breach. The special verdict then proceeds to the elements of negligence and private nuisance. After those causes of action, the verdict addresses damages in various subcategories. Though the jury found separate economic and noneconomic damages, the verdict does not attribute any category of damages to any cause of action. The Holguins sought economic damages under both breach of contract and tort theories.

The parties again dispute the applicable standard of review. AT&T, DISH, and EchoStar argue that the issue before us amounts to "a determination of the legal basis for

23

an attorney fee award," which is "a question of law to be reviewed de novo." (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.) The Holguins argue that the issue here is simply the determination of the prevailing party, which is reviewed for abuse of discretion. (*Jackson v. Homeowners Assn. Monte Vista Estates-East* (2001) 93 Cal.App.4th 773, 789.) We agree with the Holguins. AT&T, DISH, and EchoStar do not challenge the applicability of Civil Code section 1717 to the contract at issue, so the legal basis for an award of attorney fees is uncontested. The question here is whether the Holguins sufficiently prevailed on their breach of contract claim to be considered a prevailing party. Such a question is committed to the trial court's discretion "which should not be disturbed on appeal absent a clear showing of abuse." (*Jackson,* at p. 789.)

AT&T, DISH, and EchoStar have not demonstrated any abuse of discretion here. They have cited no authority supporting their contentions that contractual attorney fees may not be awarded in the absence of a finding of damages specific to a breach of contract action or that the Holguins were required to propose a verdict form specifically addressing contract damages in order to obtain attorney fees. The sole case cited by AT&T, DISH, and EchoStar relates to the inability of a trial court to reduce damages for past medical expenses based on a special verdict's failure to separate out that category of damages. (See *Greer v. Buzgheia* (2006) 141 Cal.App.4th 1150.) It has no bearing on the Holguins' entitlement to attorney fees.

Here, the Holguins prevailed on every element of their breach of contract action against AT&T, DISH, and EchoStar, including a finding of harm, and were awarded economic damages. We disagree that "a plain and logical" reading of the verdict form

24

shows that no damages were awarded for the breach of contract action. The verdict

form's section on damages was separate from each of the sections addressing liability.

"[I]n determining litigation success, courts should respect substance rather than form, and

to this extent should be guided by 'equitable considerations.' " (*Hsu v. Abbara* (1995) 9

Cal.4th 863, 877, italics omitted.) The trial court did not abuse its discretion in

determining that the Holguins were the prevailing party entitled to attorney fees under

Civil Code section 1717.[9]

V

A

The Holguins cross-appeal, arguing that the trial court abused its discretion in its

order awarding attorney fees. The Holguins contend that their attorneys were entitled to

approximately $650,000 in fees. "[T]he trial court has broad authority to determine the

amount of a reasonable fee. [Citations.] As [the Supreme Court has] explained: 'The

"experienced trial judge is the best judge of the value of professional services rendered in

his court, and while his judgment is of course subject to review, it will not be disturbed

---

[9] For the first time on reply, and without citation to authority, AT&T, DISH, and EchoStar challenge the court's order awarding attorney fees on the grounds that the special verdict's failure to identify which written instrument was breached for each defendant forecloses a finding that the Holguins are entitled to attorney fees from each defendant. Because AT&T, DISH, and EchoStar have raised issue for the first time on reply, we decline to consider it. (See *Tilton v. Reclamation Dist. No. 800* (2006) 142 Cal.App.4th 848, 864, fn. 12 ["[T]he issue was waived as to this court because it was noted only in appellants' reply brief, and not in their opening brief."]; *Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3.) Even had AT&T, DISH, and EchoStar raised this issue in their opening brief, " '[t]he absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' " (*Cahill v. San Diego Gas & Electric Co., supra*, 194 Cal.App.4th at p. 956.)

25

unless the appellate court is convinced that it is clearly wrong" ['] -- meaning that it abused its discretion." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM Group*).) " 'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.' " (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393.)

The framework for determining a fee award is familiar. "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." (*PLCM Group, supra*, 22 Cal.4th at p. 1095.) "The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." (*Ibid.*)

B

The Holguins first contend that the trial court erred in calculating the lodestar by disallowing approximately 150 hours of pretrial time spent by the Holguins' second attorney, Robert Steele, and by reducing the hourly rate of the Holguins' first attorney, Craig Griswold, to $100 after Steele's appearance in the case and during trial. Steele was allotted his full $350 hourly rate for his work during trial, where Steele served as the Holguins' primary attorney. In its order, the trial court explained the "unique circumstances" in the case that led to these adjustments:

26

"This case was originally set for trial in September 2010. Attorney Craig Griswold was plaintiffs' only lawyer. . . . Due to a medical emergency, Griswold was unable to proceed on the scheduled trial date and informed the Court that it would be necessary for him to associate another lawyer to try the case. The matter was continued for several months to allow attorney Robert Steele to get up to speed. Although Griswold attended virtually the entire trial and assisted in arguing several points, Steele tried the case. [¶] . . . While the involvement of both lawyers is certainly understandable given the circumstances, the total hours claimed are clearly well beyond what plaintiffs would have incurred had Griswold tried the case by himself as originally contemplated. The 154 hours spent by Steele to prepare for trial would have been unnecessary if Griswold had been available and are therefore disallowed."

Similarly, the trial court found Griswold's work after Steele's appearance in the case to be largely unnecessary: "Certainly some of this work was time that Steele did not have to spend, but the bulk of it was support for Steele given his late entry into the case." The trial court allowed Griswold's hours, but only at a reduced rate of $100 "to account for the assistance provided." The reduced rate of $100 reflects the difference between Steele's normal hourly rate of $350 and Griswold's normal hourly rate of $450.

The Holguins argue that the trial court's order runs afoul of the principle that attorney fee awards "should ordinarily include compensation for all hours reasonably spent" because of the reductions in hours and hourly rate applied by the court. (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 624.) We disagree. "In referring to '*reasonable*' compensation, [our Supreme Court] indicated that trial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 (*Ketchum*).) The trial court is under no obligation to award the full extent of

27

fees claimed by the Holguins' attorneys. Under the circumstances of the case before it, the trial court found that certain fees incurred by the Holguins' attorneys were inefficient or duplicative and omitted those fees from its award.[10] (See *ibid.*; see also *Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 622, 624-625.) The Holguins' contention that the court sought to treat the case as if it had been tried by one attorney is unsupported by the record. In fact, the court awarded the Holguins fees for the work of both their attorneys at trial, albeit at a reduced hourly rate for Griswold. We conclude that the court's decision is in accordance with applicable law and well supported by the facts before it. It was not an abuse of discretion.

C

The Holguins next argue that the trial court erred in apportioning fees between the Holguins' breach of contract claim, for which the Holguins were entitled to fees, and the Holguins' tort claims, for which they were not. As the trial court explained, "Where a cause of action based on the contract providing for attorney's fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees . . . only as they relate to the contract action." (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129.)

At trial, in addition to their breach of contract claim, the Holguins pursued tort claims for trespass, concealment, intentional misrepresentation, intentional infliction of

---

[10]     We expressly reject the Holguins' contention, for the first time on reply, that the trial court was somehow required to award fees for Steele's work after continuing trial and allowing him to associate as counsel for the Holguins. The court's decision to grant a trial continuance, at the Holguins' request, in no way bound the court to later accept as reasonable the fees that their requested continuance engendered.

emotional distress, nuisance, and negligence. The trial court dismissed the first four of these claims after granting motions for nonsuit following the conclusion of the Holguins' case. The latter two claims, for nuisance and negligence, were decided by the jury in the Holguins' favor. The jury awarded $40,500 in economic damages against AT&T, DISH, DISH California, and EchoStar, which the Holguins sought for both their breach of contract and tort claims. The jury also awarded $55,000 in noneconomic damages against the same parties, which the Holguins sought only for their tort claims.

The trial court used these damages awards as a basis to apportion the Holguins' fees. The court found: "Based on its substantial familiarity with the issues in the case and the evidence presented at trial, the Court finds it reasonable to attribute 20 percent of the attorney time . . . to liability issues and 80 percent . . . to damages." The court awarded the full amount of attorney time attributable to liability. As to damages, the trial court found that "the overlapping and coextensive nature of the economic damages makes it impracticable to attempt an apportionment as to those damages. But at the same time, it is clear that efforts to establish plaintiffs' noneconomic damages had nothing to do with their breach-of-contract claim." The court then reduced the attorney time attributable to damages in proportion to the percentage of the Holguins' damages that were noneconomic.

The Holguins contend the trial court erred because much of the evidence offered by the Holguins in support of their noneconomic damages was "useful" or "necessary" to support their economic damages. Thus, they maintain, the attorney time that the trial court attributed to their noneconomic damages should be included in the fee award.

29

(*Reynolds Metals Co. v. Alperson, supra*, 25 Cal.3d at pp. 129-130 ["Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed."].) Assessment of these issues requires analysis of the interplay between the Holguins' various claims, the evidence offered at trial, and the reasonableness of the time spent on various aspects of the Holguins' trial presentation. These are matters that are properly committed to the trial court's sound discretion. (*PLCM Group, supra*, 22 Cal.4th at p. 1095.) The trial court found the proportion of economic to noneconomic damages to be an appropriate proxy for apportionment of attorney fees attributable to the Holguins' damages case. The Holguins have provided no reason to substitute our judgment for that of the trial court in this regard.

D

The Holguins' last assignment of error addresses the trial court's decision not to apply an enhancement, or multiplier, to its lodestar calculation. "The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." (*PLCM Group, supra*, 22 Cal.4th at p. 1095.) These factors include "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." (*Ketchum*, *supra*, 24 Cal.4th at p. 1132.)

The Holguins contend that "all" of the factors justifying enhancement are present, including the uncertain nature of prevailing, the complexity of the case, counsel's skill,

30

the result achieved, and the displacement of other employment. Under such circumstances, the Holguins argue, the trial court was required to apply an enhancement to the lodestar. However, the Holguins' argument has been rejected by the very authority they rely on: "Of course, the trial court is not *required* to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case . . . ." (*Ketchum, supra*, 24 Cal.4th at p. 1138.)

The Holguins' argument misunderstands the purpose of adjustments to the lodestar. "The purpose of such adjustment is to fix a fee at the fair market value for the particular action." (*Ketchum, supra*, 24 Cal.4th at p. 1132; see also *Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, 1171-1172.) Adjustment may be made upward or downward depending on the court's assessment of the fair market value for the particular action at issue. " '[Civil Code section] 1717 provides for the payment of a "reasonable" fee. After the trial court has performed the calculations [of the lodestar], it shall consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the section 1717 award so that it is a reasonable figure.' " (*PLCM Group, supra*, 22 Cal.4th at pp. 1095-1096.) On the other hand, if the trial court finds that the lodestar is less than a reasonable amount, enhancement is justified. (*Ketchum,* at p. 1132.)

Contrary to the Holguins' assertions, their attorneys are not necessarily receiving less than the fair market value for their legal services when no enhancement is applied to the lodestar based on the contingent nature of their fees. (*Ketchum, supra*, 24 Cal.4th at

31

p. 1133.) Where, as here, the court determines that the lodestar itself constitutes a reasonable fee for the action at issue, no enhancement is warranted.

Moreover, the trial court did not use the contingency fee agreement between the Holguins and their attorneys as a "factor by which it reduced the fee," as the Holguins argue.[11] Instead, the court compared its lodestar ($180,648) to the fee that the Holguins would have paid their attorneys pursuant to their agreement ($16,200 if based on the contract claims alone, and $38,200 if based on the entire award), and it found that no enhancement was necessary to achieve a reasonable fee for this particular action. (*Weeks v. Baker & McKenzie, supra*, 63 Cal.App.4th at p. 1176 ["As the trial court found, the factor of amounts involved and results obtained militate *against* enhancing the fee award."].) Consideration of the Holguins' own contingency fee arrangement as a factor in its analysis was proper. (*Vella v. Hudgins* (1984) 151 Cal.App.3d 515, 520.) The trial court's decision not to award an enhancement, either alone or in combination with the Holguins' other assignations of error, was not an abuse of discretion.[12]

---

[11]    We likewise find no support in the record for the Holguins' assertion that the court "failed to consider enhancing the fee to reflect the contingent nature of the fee agreement." As such, *Green v. Dillingham Construction N.A., Inc.* (2002) 101 Cal.App.4th 418, cited by the Holguins, does not support reversal here.

[12]    In their reply brief, the Holguins state that we "should also award the Holguins their fees on this appeal." They have not offered any discussion or analysis of their entitlement to fees beyond this bare request. We therefore deny the Holguins' request, without prejudice to their ability to seek fees on this appeal from the trial court. (See *Banning v. Newdow* (2004) 119 Cal.App.4th 438, 459.) We express no opinion regarding the merits of the Holguins' entitlement to fees on this appeal.

DISPOSITION

The judgment, the court's April 29, 2011, order denying AT&T, DISH and EchoStar's posttrial motions, and the court's June 6, 2011, order awarding attorney fees are affirmed. The Holguins are awarded costs on appeal.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


NARES, J.