Filed 4/21/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| PETER REYNOLDS,<br><br>　　Plaintiff and<br>　　Respondent,<br>v.<br><br>FORD MOTOR COMPANY,<br><br>　　Defendant and<br>　　Appellant. | A154811<br><br>(Sonoma County<br>Super. Ct. No. SCV254959) |

Defendant and appellant Ford Motor Company (Ford) appeals from a July 20, 2018 order awarding plaintiff and respondent Peter Reynolds (Reynolds) prevailing buyer's attorney fees of $201,891 under the Song-Beverly Consumer Warranty Act. (Song-Beverly Act; Civ. Code, § 1790 et. seq.[1]) [2] We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2006, Reynolds purchased a 2005 Ford F-250 truck with a 6.0-liter diesel engine. Over the next six years, Reynolds had the truck repaired 15 times but it continued to malfunction. In 2013, Ford denied Reynolds's request that it buy back or replace the truck under the Song-Beverly Act.

---

[1] All further unspecified statutory references are to the Civil Code.
[2] We deem Ford's July 9, 2018 notice of appeal to be a premature notice of appeal from the July 20, 2018 order. (Cal. Rules of Court, rule 8.100(d)(e)[Premature Notice of Appeal].)

Thereafter, Reynolds hired counsel to pursue a lawsuit against Ford. The second amended complaint, the operative pleading, was filed August 2014 and contained several causes of actions including one for relief under the Song-Beverly Act; Ford's answer denied all liability.

Following extensive litigation, the parties settled the case in its entirety in September 2016. The terms of the settlement provided both that "[Ford] will issue one check, inclusive of all purported damages incurred by [Reynolds] in the amount of $277,500.00, except attorney's fees and costs which will be resolved via agreement or motion," and that Ford agreed to "pay [Reynolds's ] attorney's fees, costs, and expenses pursuant to Civil Code section 1794(d) in an amount determined by the Court, by way of noticed motion, to have been reasonably incurred by [Reynolds] in the commencement and prosecution of this action."

**Motion for Attorney Fees**

Reynolds filed a motion requesting fees in the aggregate lodestar sum of $308,696.25, comprised of $205,797.50 for legal services provided by Knight Law Group, LLC (formerly O'Connor and Mikhov, LLP) and The Altman Law Group plus a lodestar multiplier of 1.5 ($102,898.75). Reynolds submitted declarations from counsel Brian Altman and Steve Mikhov, verified billing statements, a National Consumer Law Fee Survey, and 51 court orders and rulings in a variety of Song-Beverly Act cases approving counsel's requested hourly rates and fee requests. Reynolds affirmed the case was taken on a contingency fee basis, such that counsel would not be paid at all if he lost; neither the retainer agreement nor the specific fee terms of the agreement were provided.

2

Ford opposed, arguing that Reynolds's counsel was not entitled to recover both a contingency fee and statutory fee, and therefore counsel was required to reimburse Reynolds for any statutory fee awarded under the Song-Beverly Act up to the value of the contingency fee. Reynolds's position was that "[t]he existence of a contingency fee agreement" is not a relevant factor in determining whether a prevailing party is entitled to recover attorney fees under the Song-Beverly Act.

The court conducted a lodestar analysis and awarded Reynolds attorney fees in the aggregate sum of $201,891, based upon compensation for 457.85 hours at reasonable hourly rates ranging from $225/hour to $500/hour, plus a lodestar multiplier of 1.2, "reasonable and appropriate to accomplish the salutary objectives of the Song-Beverly Act."

The court ruled Reynolds had no obligation to disclose the fee terms of his retainer agreement with counsel:

> "The lodestar calculation method requires that the court make determinations of 'reasonableness' at several different stages in that procedure. The court must determine whether the individual tasks of work performed were reasonabl[y] necessary as well as whether the number of hours billed for performing those tasks were reasonable. The court must also determine whether the hourly rate claimed for the work was reasonable in light of a number of factors. Finally, the court must consider a number of factors in determining whether the specific circumstances of the case require that the calculated fees be increased or decreased by a discretionary numerical factor. The final lodestar-based fee award is, thus of a reasoned analysis.

> "Many statutory fee-award provisions begin with the lodestar method but are governed by the specific statutory requirement that the final fee award be 'reasonable' in nature. No such requirement is found in the Song-Beverly Act. The fee award must be based on the court's calculation of the 'actual time

3

expended . . . determined by the court to have been reasonabl[y] *incurred.*' [(§ 1794, subd. (d).)] The legislature did not include a requirement that the court also determine [whether] the fees are reasonable in amount. Had the legislature intended such a requirement, it could easily have so stated. In this case, the court determines that the actual time expended for legal . . . representation of plaintiff was reasonably incurred under the circumstances prevailing at the time the services were provided.

"The court's review of the overall reasonableness of the attorney fees is, thus, restricted by the specific language in the fee award provision of the Song-Beverly Act. The court does not have the discretion to consider whether plaintiff's attorney received additional compensation by . . . way of a separate retaine[r] agreement."

## DISCUSSION

### A. The Song-Beverly Act

The Song-Beverly Act, which was enacted in 1970 (Stats. 1970, ch. 1333, § 1, p. 2478; § 1790 et seq.) as "manifestly a remedial measure, intended for the protection of the consumer" (*Kwan v. Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174, 184), includes a fee-shifting provision allowing for prevailing buyers to recover attorney fees under section 1794. "Attorneys considering whether to undertake cases that vindicate fundamental public policies may require statutory assurance that, if they obtain a favorable result for their clients, they will actually receive the reasonable attorney fees provided for by the Legislature and computed by the court. As the high court has recognized, the aim of fee-shifting statutes is 'to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific . . . laws.' " (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 583 [discussing California Fair Employment and Housing Act], quoting in part *Pennsylvania v. Del. Valley*

4

*Citizens' Council* (1986) 478 U.S. 546, 565 [discussing Federal Clean Air Act].)  The current version of subdivision (d) of section 1794 reads as follows:

> "(d) If the buyer prevails in an action under this section, the buyer *shall be* allowed by the court to recover as part of the judgment a sum   equal to the aggregate amount of costs and expenses, including     attorney's fees based on actual time expended, determined by the court      to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action.*"* (Italics added.)

By providing for a mandatory award of attorney fees and eliminating the court's discretionary authority to deny an award found to be inappropriate [3], "our Legislature has provided injured consumers *strong encouragement* to seek legal redress in a situation in which a lawsuit might not otherwise have been economically feasible." (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 994; italics added.)

In determining the methodology to be used to award attorney fees under the Song-Beverly Act, the appellate courts have unanimously concluded the lodestar adjustment method of calculating attorney fees is

---

[3]     Section 1794 originally allowed for a prevailing buyer to recover a judgment of "three times the amount at which the actual damages are assessed, plus reasonable attorney fees." (Stats. 1970, ch. 1333, § 1, p. 2482.) In 1982, section 1794 was repealed and a new section 1794, with subdivisions, was reenacted, adding subdivision (d), which provided that a prevailing buyer "may be" allowed an award of "attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer, . . . unless the court in its discretion determines that such an award of attorney's fees would be inappropriate." (Stats. 1982, ch. 385, §§ 1, 2, p. 1716.) In 1987, the Legislature amended subdivision (d) to provide that the prevailing buyer "shall be," instead of "may be," allowed an award of attorney fees based on "actual time expended" and "determined by the court to have been reasonably incurred" by the buyer, and eliminated the language granting the court discretion to deny an award if it found such an award would be inappropriate. (Stats. 1987, ch. 1280, § 4, pp. 4562–4563.)

appropriate for two reasons: (1) "the lodestar adjustment method *is* based on actual, reasonable attorney time expended as the objective starting point of the analysis," and (2) "the lodestar adjustment method is the prevailing rule for calculation of statutory attorney fees unless the statute expressly indicates a contrary intent, and no such contrary intent is apparent . . . ." (*Robertson v. Fleetwood Travel Trailers of California, Inc*. (2006) 144 Cal.App.4th 785, 820, 821 (italics in original); see, e.g., *Goglin v. BMW of North America, LLC*. (2016) 4 Cal.App.5th 462, 470 [accord]; *Doppes v. Bentley Motors, Inc*. (2009) 174 Cal.App.4th 967, 997 [accord].)

A trial court assessing attorney fees using the lodestar adjustment method "begins with a touchstone or lodestar figure, based on the 'careful compilation of the time spent and reasonable hourly compensation for each attorney . . . involved in the presentation of the case.' " (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131–1132, quoting in part *Serrano v. Priest* (1977) 20 Cal.3d 25, 48 (*Serrano III*).) Reasonable hourly compensation is based on "prevailing hourly rates" in the community, thereby "anchoring the calculation" to an objective standard. (*Ketchum v. Moses*, *supra*, at p. 1132.) Once the touchstone or lodestar figure (reasonable hours multiplied by reasonable rates) is calculated as "the basic fee," "it may be adjusted by the court [by applying a multiplier] based on factors, including . . ., (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required

6

extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." (*Ibid.*)

Because the award of attorney fees under the Song-Beverly Act, unlike other fee-shifting statutes, is limited to actual hours both expended and determined by the court to be reasonably incurred, the appellate courts have also unanimously held that " '[i]t is inappropriate and an abuse of a trial court's discretion to tie an attorney fee award to the amount of the prevailing buyer/plaintiff's damages or recovery in a Song-Beverly Act action . . . .' " (*Hanna v. Mercedes-Benz USA, LLC* (2019) 36 Cal.App.5th 493, 510; see *Warren v. Kia Motors America, Inc.* (2018) 30 Cal.App.5th 24, 37 [accord], *Robertson v. Fleetwood Travel Trailers of California, Inc.*, *supra,* 144 Cal.App.4th at p. 818 [accord].) "[T]he legislative policies are in favor [of the prevailing buyer's] recovery of all attorney fees reasonably expended, without limiting the fees" to a proportion of any recovery of damages or other monetary relief. (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 164 [appellate court found trial court erred by calculating prevailing buyer's reasonable attorney fee and then imposing a "downward adjustment based on its notion of an appropriate contingent fee percentage, regardless of the amount of attorney fees . . . counsel assertedly incurred"].)

## B. The Court Did Not Abuse its Discretion in Awarding Fees Without Considering the Contingency Fee Agreement

As Ford concedes, the sole issue before us is whether the court abused its discretion in deciding that the fee terms of the retainer agreement (hereinafter referred to as "contingent fee agreement") were "legally irrelevant" to its calculation of attorney fees using the lodestar adjustment method. We conclude the trial court's ruling was correct.

Ford first contends that, had the court examined the contingency fee agreement, it may well have concluded counsel was seeking to recover and retain "an unreasonable" fee. Relatedly, Ford complains that "when a contingency fee agreement allows counsel to retain *both* a contingency fee and statutory fee award, without disclosing that fact to the trial court, that throws a monkey wrench into the lodestar calculation [because] [t]he retention of a contingency fee payment on top of a statutory fee, if not taken into account in the lodestar calculation, effectively skews the hourly rate upward."

However, the trial court is explicitly and only tasked under section 1794, subdivision (d) with calculating attorney fees based on actual hours expended that were reasonably incurred for the particular litigation. The trial court, here, having made that determination, "*by definition,*" rendered an award representing "the reasonable worth of the services rendered in vindication" of Reynolds's claim under the Song-Beverly Act. (*Blanchard v. Bergeron (*1989) 489 U.S. 87, 96, italics added.) The court set the reasonable hourly rates based on its over forty years of experience in the legal field in Mendocino and Sonoma Counties and after a careful review of the issues in this matter and the pre-settlement motions; it rejected Reynolds's request for fees at a higher rate charged in other jurisdictions because there had been no showing that hiring of local counsel was impractical. The trial court acted well within its discretion in using "the prevailing market value in the community for similar legal services" (*PLCM Group, Inc.* v. *Drexler* (2000) 22 Cal.4th 1084, 1095), relying on its personal knowledge and familiarity with the area legal services, as the " 'touchstone' for determination" of the reasonable hourly rates. (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 643.) The contingency fee agreement had "no relevance" to the reasonable hourly rates

8

(*ibid.*) and the court had no obligation to make an additional determination as to whether the calculated lodestar sum was inappropriate. (See *Chacon v. Litke* (2010) 181 Cal.App.4th 1234, 1260.)

Ford also complains that the failure to disclose the contingency fee agreement caused the court to double count the contingent risk factor in calculating the lodestar sum because Reynolds "successfully invoke[d] the 'contingent' nature of [the] retention as a basis for obtaining a lodestar multiplier in the statutory fee award, but then refused to allow the court to look at the . . . contingency fee agreement to complete the analysis of what is necessary to reasonably compensate" counsel. This argument is not supported by the record, which reflects the court rejected Reynolds's request for a 1.5 multiplier and determined a 1.2 multiplier was appropriate based on the following factors: the complexity of the factual issues, counsel's extensive experience in this type of litigation, and "[i]n litigating these types of cases with a large corporate defendant such as Ford Motor Company, many attorneys may decline to represent plaintiffs due to the financial resources of defendant and the prospect of long and hard fought litigation." We see no evidence the court considered the contingency nature of the case as part of its decision to apply a multiplier.

Relying on *Holguin v. Dish Network LLC* (2014) 229 Cal.App.4th 1310 (*Holguin*), for the general proposition that a trial court may consider a contingency fee agreement in calculating a lodestar sum, Ford asserts that had the court looked at the contingency fee agreement it could have applied a negative multiplier to account for additional fees counsel had or would receive under the agreement. We disagree. In *Holguin*, the appellate court was concerned with an award of attorney fees under section 1717, which allows a trial court to calculate a lodestar figure and then make additional

9

adjustments (up or down) to reach a "reasonable" figure. (*Holguin*, *supra*, at p. 1332, citing *PLCM Group, Inc. v. Drexler*, *supra*, 22 Cal.4th at p. 1095 [case concerning award of attorney fees under section 1717].) The *Holguin* court went on to rule that in that case the trial court had not abused its discretion in refusing to apply a positive multiplier to a calculated lodestar sum because plaintiffs' percentage contingent fee obligated them to pay a substantially smaller fee than the calculated lodestar sum and therefore no multiplier was required to take into account the contingency risk factor. (229 Cal.App.4th at p. 1333.) Unlike the fee-shifting statute at issue in *Holguin*, in this case once the court calculated the lodestar sum plus a multiplier, it correctly ruled section 1794, subdivision (d) did not permit a further reduction for a purportedly "inappropriate" award, i.e., applying a negative multiplier to prevent counsel from receiving "additional compensation by . . . way of a separate retaine[r] agreement."

We also reject Ford's argument that the trial court had an independent obligation to consider the contingency fee agreement to protect Reynolds and to ensure compliance with the Rules of Professional Responsibility. While Ford recognizes there is a conflict in the courts concerning whether counsel may contract with a client to receive both a contingency fee and a statutory fee, it asks us to "endorse the majority rule set forth in" *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359 (*Horsford*), and hold that "an attorney may not contract to keep both a contingency fee and a statutory fee award," and also find the trial court abused its discretion in not including language in its fee order precluding counsel from retaining both the contingency and statutory fees.

In support of its argument, Ford relies on a paragraph in *Horsford* (132 Cal.App.4th at p. 401), in which the Fifth District Court of Appeal states:

> "The trial court appears to be saying that the availability of contingency fees from the plaintiff displaces the considerations of contingency and delay that are required to be factored in to a fee award to make it "reasonable" under the standards reviewed in *Ketchum v. Moses, supra*, 24 Cal.4th at pages 1132–1134 . . . . Yet, as respondent acknowledges, plaintiffs' counsel are not permitted to take contractual fees in addition to statutory fees: If the contingency fee is *larger* than the statutory fee award, counsel is permitted to accept that fee, with a setoff for statutory fees received. If the contingency fee is smaller than the statutory fee, counsel must reimburse the plaintiff from the statutory award for any amounts already paid by the client *pursuant to the contingency contract*. (See *Blanchard v. Bergeron, supra*, 489 U.S. at p. 93; *Flannery v. Prentice, supra*, 26 Cal.4th at p. 577.)" (First italics in original; second italics added.)

Given the second italicized portion of the paragraph, which Ford ignores, the paragraph can only be read as a description of the contingency contract in that case and it does not state, as a general principle of law, that a statutory award must be offset against any amount that the prevailing party owes to counsel under a contingency fee agreement.

More significantly, we are not here deciding a matter regarding the limitations that professional conduct rules may place on an attorney's freedom to contract with clients regarding a contingency fee and statutory fee. This matter is focused on a trial court's calculation of an award of attorney fees, limited to reasonable hours and rates, payable to a prevailing buyer by a losing defendant in a Song-Beverly Act case. In awarding attorney fees, the trial court is limited by the terms of subdivision (d) of section 1794, which "controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer. What a plaintiff may be bound to

11

pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the 'reasonable attorney's fee' that a defendant must pay pursuant to a court order." (*Venegas v. Mitchell* (1990) 495 U.S. 82, 90.) The Legislature's intent in allowing for a prevailing buyer to recover attorney fees, as with most fee-shifting statutes, was "to enable private parties to obtain legal help in seeking redress" for violations of the Song-Beverly Act; the attorney fees provision was not intended "to replicate exactly the fee an attorney could earn through a private fee arrangement with his client." (*Pennsylvania v. Del. Valley Citizens' Council*, *supra,* 478 U.S. at p. 565.)

Ford's argument concerning the potential for a windfall if Reynolds's counsel were to receive both a contingency fee and statutory fee is based on the premise that a statutory fee award under the Song-Beverly Act will "fully compensate" an attorney for legal services rendered in the case. This is not necessarily so. Unlike an hourly fee agreement, "a contingent fee [agreement] involves economic considerations separate and apart from the attorney's work on the case. [¶] In addition to compensation for the legal services rendered, there is the raison d'etre for the contingent fee: the contingency. The lawyer on a contingent fee contract receives nothing unless the plaintiff obtains a recovery. Thus, in theory, a contingent fee in a case with a 50 percent chance of success should be twice the amount of a noncontingent fee for the same case. Usually, the fee is contingent not only on the ultimate success of the case but also on the amount recovered; that is, the fee is measured as a percentage of the total recovery. Thus, the lawyer runs the risk that even if successful, the amount recovered will yield a percentage fee which does not provide adequate compensation. [Citation.] [¶] . . . [E]ven putting aside the contingent nature of the fee, the lawyer under such an arrangement agrees to delay receiving his fee until the conclusion of

12

the case, which is often years in the future. The lawyer in effect finances the case for the client during the pendency of the lawsuit. [Citation.] If a lawyer was forced to borrow against the legal services already performed on a case which took five years to complete, the cost of such a financing arrangement could be significant." (*Cazares v. Saenz* (1989) 208 Cal.App.3d 279, 288.) Consequently, " '[a] lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.' [Citations.]" (*Ketchum v. Moses*, *supra*, 24 Cal.4th at pp. 1132–1133.)

Ford also ignores the practical effect of requiring trial courts to evaluate the contingency fee agreement to ensure that the statutory fee would not result in "an unreasonable" fee. By its latest enactment of section 1794, subdivision (d), the Legislature envisioned an objective, nonarbitrary, and easy to administer calculation of attorney fees based on the " 'lodestar,' " method (reasonable hours and rates plus a multiplier), "in order to fix the fee at the fair market value for the legal services provided. . . . Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." (*PLCM Group, Inc. v. Drexler*, *supra*, 22 Cal.4th at p. 1095, citing to *Serrano III*, *supra*, at 20 Cal.3d pp. 48 & fn. 23, 49.) Ford suggests the trial court engage in what it characterizes as a simple fee comparison exercise in order to determine whether a contingency fee agreement renders the lodestar sum unreasonable. In reality, an inquiry into the contingency fee agreement might very well enmesh the court in "wholly ancillary litigation" on questions of the interpretation of the agreement and "the internal economics of a law office, [resulting in]. . . an *increase* rather than a

13

diminution of costs of fee awards under" section 1794, subdivision (d). (*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at p. 1098; see *Hanna v. Mercedes-Benz USA, LLC*, *supra*, 36 Cal.App.5th at pp. 509–512 [remand for recalculation of § 1794, subd. (d) attorney fees, based, in part, on trial court's misreading of contingency fee agreement and then using faulty interpretation as sole basis for awarding certain fees ].)  As our Supreme Court has advised, " 'We do not want "a [trial] court, in setting an attorney's fee, [to] become enmeshed in a meticulous analysis of every detailed facet of the professional representation.  It . . . is not our intention that the inquiry into the adequacy of the fee assume massive proportions, perhaps dwarfing the case in chief." ' " (*Serrano v. Unruh, supra*, 32 Cal.3d at p. 642.)

At bottom, Ford's concern that it is improper for a court to disregard a potential contingency fee award in determining the statutory fee under section 1794 is a question "more appropriately directed to the Legislature. . . . [W]e decline to rewrite the statutory language and depart from governing principles of statutory construction to reach the result [Ford] seeks."  (*Brandon S. v. State of California ex rel. Foster Family Home etc. Ins. Fund* (2009) 174 Cal.App.4th 815, 830.)

In sum, we cannot reverse the trial court's order awarding attorney fees unless we are convinced the court is clearly wrong.  (*Serrano III, supra*, 20 Cal.3d at p. 49.)  Based on the record before us we cannot so conclude, and accordingly we affirm.  We find it sufficient to note that "[l]awyers are often faced with a conflict between their own economic interests and the welfare of their clients.  This conflict arguably exists whenever contingent fee agreements are involved. . . .  Absent evidence to the contrary, however, the Court should assume that the plaintiff's lawyer has abided by his ethical obligations and avoided the temptation to place his own interest ahead of his

client's." (*Bonetti v. Embarq Management Co.* (M.D. Fla. 2009) 715 F. Supp. 2d 1222, 1228.) "[N]othing we say in this opinion . . . alters existing rules forbidding attorneys to charge or obtain unreasonable fees, or diminishes clients' established remedies if unreasonable fees are sought or exacted. (See, e.g., Bus. & Prof. Code, § 6200 et seq. [arbitration of attorney fees].)" (*Flannery v. Prentice, supra,* 26 Cal.4th at p. 588.)[4]

## DISPOSITION

The July 20, 2018 order is affirmed. Plaintiff is awarded costs on appeal.

---

[4] In light our determination, we deny Ford's request for judicial notice of a fee agreement used by Reynolds's counsel in another case. Nor do we need to address the parties' other contentions.

_____
Petrou, J.

WE CONCUR:


_____
Siggins, P.J.


_____
Fujisaki, J.

*A154811/Reynolds v. Ford Motor Company*

16

Trial Court:        Sonoma County Superior Court

Trial Judge:        Hon. Nancy Shaffer

Counsel:        Rosner, Barry & Babbitt, Hallen D. Rosner, Arlyn L. Escalante; The Altman Law Group, Bryan Charles Atlman; Knight Law Group, Steve Mikhov, Lauren Andrea Ungs for Plaintiff and Respondent.

Horvitz & Levy, Lisa Perrochet, John A. Taylor Jr., and Allison W. Meredith; Gordon Rees Scully Mansukhani, Spencer P. Hugret for Defendant and Appellant.