[No. B085769. Second Dist., Div. Seven. Dec. 12, 1995.]

ARLISS S. CURRY et al., Plaintiffs and Respondents, v.
ANN MOODY et al., Defendants and Appellants.

## Counsel

William R. Larr and Brian K. Brookey for Defendants and Appellants.

Patrick Frawley for Plaintiffs and Respondents.

## Opinion

**JOHNSON, J.**—Plaintiffs brought this action for declaratory relief and to quiet title based on a forged reconveyance of a deed of trust on property purchased by defendants. The trial court awarded damages to the plaintiffs equivalent to the principal of the note secured by the trust deed and compound interest from the date of inception of the loan. Plaintiffs were also awarded attorney fees. Defendants appeal from those portions of the judgment awarding compound interest and attorney fees. We modify the judgment as to the calculation of compound interest and strike the award of attorney fees. In all other respects, the judgment is affirmed.

### Facts and Proceedings Below

The facts are undisputed.

In January 1981, Gloria Hubenthal borrowed $19,200 from plaintiffs Arliss S. and Marie Curry (hereafter the Currys) and executed a note and deed of trust on her home as security.

Hubenthal never repaid the Curry loan. However, in August 1991, a forged reconveyance of the Currys' deed of trust was recorded and a few days later Hubenthal received a loan of $126,800 from the Reliable Mortgage Company secured by a deed of trust on her home. Reliable later assigned this loan and deed of trust to defendants (hereafter the Moody Group) who eventually foreclosed on the property. The Moody Group took title to the Hubenthal property by trustee's deed in August 1992.

When the Currys learned of these events, they brought this action against the Moody Group, Reliable and others, alleging their signatures on the reconveyance were forged and that their deed of trust remained a valid encumbrance against the Hubenthal property with priority over all other liens on the property. The Currys' complaint alleged that if the purported reconveyance was left outstanding they would lose their security interest in the subject property for payment of their loan to Hubenthal and their right to exercise their power of sale under their deed of trust. The Currys sought a declaration the purported reconveyance was void and surrender to them of the forged document or, in the alternative, damages in the amount of $19,200 plus interest and attorney fees.

The case went to trial against the Moody Group only. For purposes of trial, the parties stipulated the Currys' signatures on the reconveyance were forged, the Currys' deed of trust was a valid encumbrance against the property and the Currys were entitled to damages based on the principal of the loan plus interest. The parties stipulated further the only issues to be determined at trial were how interest should be calculated on the loan and whether either party was entitled to attorney fees.

On the issue of interest on the loan, the Currys contended they were entitled to compound interest from the inception of the agreement in January 1981 until the time of trial in April 1994. The Moody Group contended the Currys were entitled to simple interest on the loan from its inception in January 1981 to the date of the foreclosure sale in August 1992 and to compound interest from the date of the foreclosure sale to the date of trial.

The Currys contended they were entitled to attorney fees under a provision of the Hubenthal note providing for such fees "[i]f action be instituted on this note." The Moody Group opposed attorney fees on the grounds the complaint did not allege the basis for their award and the Moody Group was not a signatory to the Hubenthal note. The Moody Group argued in the alternative that if the note provided for attorney fees to the Currys should they prevail in the action it should also be interpreted as providing for attorney fees to the Moody Group should it prevail.

The issues regarding compound interest and attorneys fees were tried to the court based on the language of the Hubenthal note, the declarations of Hubenthal, her attorney and the Currys, a stipulation of facts and trial briefs submitted by each side. We detail this evidence in the discussion below.

After considering the documentary evidence and trial briefs, the court awarded judgment to the Currys for the principal amount of the Hubenthal note plus compound interest from the inception of the agreement and attorney fees. The Moody Group filed a timely appeal.

DISCUSSION

I. *The Trial Court Erred in Interpreting the Contract to Provide for Compound Interest From the Date of Inception.*

A. *Standard of Review.*

■ When the parties dispute the meaning of a contract term, the trial court's first step is to determine whether the term is ambiguous, i.e., it is "reasonably susceptible" to either of the meanings urged by the parties. (*Winet* v. *Price* (1992) 4 Cal.App.4th 1159, 1165 [6 Cal.Rptr.2d 554].) In making this determination, the court is not limited to the contract language itself but provisionally receives, without actually admitting, any extrinsic evidence offered by a party which is relevant to show the contract could or could not have a particular meaning. (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373].) If, in light of the language of the contract and the extrinsic evidence as to its meaning, the trial court determines the language is "reasonably susceptible" to either of the meanings urged by the parties the court moves on to the second step which is to determine just what the parties intended the contract term to mean. (*Winet* v. *Price, supra*, 4 Cal.App.4th at p. 1165.)

The trial court's ruling on the first step, the threshold question of ambiguity, is a question of law subject to our independent review. (4 Cal.App.4th at p. 1165.)

The trial court's ruling on the second step, the construction to be given to an ambiguous contract term, is a question of law subject to our independent review if no extrinsic evidence was introduced as to the meaning of the contract or, if extrinsic evidence was introduced, this evidence was not in conflict. We apply the substantial evidence test only when conflicting evidence was introduced as to the meaning of the contract term. In that

instance, any reasonable construction of the contract will be upheld if it is supported by substantial evidence. (*Winet* v. *Price, supra,* 4 Cal.App.4th at p. 1165-1166.)

In this case we are not bound by the trial court's interpretation of the Hubenthal note because the determination of ambiguity is always subject to de novo review.

###### B. *The Contract Is Not Reasonably Susceptible to Meaning Compound Interest Accrued From the Date of the Contract's Inception.*

The relevant language of Hubenthal's promissory note reads as follows: "I promise to pay to Arliss S. Curry or Marie R. Curry, husband and wife, at Los Angeles County, California the sum of nineteen thousand two hundred . . . dollars with interest from January 1, 1981 at the rate of 13 percent per annum, payable at the time of sale of the house. Should interest not be so paid it shall thereafter bear like interest as the principal."

We interpret this language to mean the principal of $19,200 would earn simple interest at the rate of 13 percent per year from January 1, 1981, until the sale of Hubenthal's house at which time the principal and accrued simple interest would become due and payable. If the principal and accrued interest were not paid at the time the house was sold, interest on the total sum due would "thereafter" be compounded. We base this interpretation on the plain language of the note. The note speaks of "interest" from January 1, 1981, to the time the house is sold. It does not specify "compound interest" for this period. In contrast, the note provides that if interest is not paid at the time the house is sold "it shall thereafter bear like interest as the principal." (Italics added.) As we discuss more fully below, a loan does not bear compound interest unless an agreement to that effect is clearly expressed in writing. (Cal. Const., art. XV, § 1.) The only clear expression of compound interest occurs in reference to interest accruing after the house is sold. (Cf. *Penzner* v. *Foster* (1959) 170 Cal.App.2d 106, 108-109 [338 P.2d 533].)

The parties agree the foreclosure sale in August 1992 constituted the "sale of the house" for purposes of the contract. This sale triggered the obligation to pay the principal plus the simple interest which had accrued to that date. Because the principal and accrued interest were not paid on that date, interest on the loan was compounded "thereafter."

The Currys argue this interpretation of the note ignores extrinsic evidence Hubenthal and the Currys intended the loan to bear compound interest from its inception. However, as we explain below, this evidence was not competent to establish the meaning urged by the Currys. Furthermore, as a matter

of law an ambiguous contract cannot be construed to provide for compound interest.

The Currys offered evidence showing they and Hubenthal intended the loan to bear compound interest from its inception. Under the first step in our analysis we consider whether this evidence tends to show the contract is reasonably susceptible to the meaning the Currys contend the parties intended.

■ Whether the contract is reasonably susceptible to a party's interpretation can be determined from the language of the contract itself. (*Southern California Edison Co.* v. *Superior Court* (1995) 37 Cal.App.4th 839, 848 [44 Cal.Rptr.2d 227].) We bear in mind, however, "[t]he fact that the terms of an instrument appear clear to a judge does not preclude the possibility that the parties chose the language of the instrument to express different terms." (*Pacific Gas & E. Co.* v. *G.W. Thomas Drayage etc. Co., supra,* 69 Cal.2d at p. 39.) Nevertheless, evidence of the meaning the parties gave to the contract language is only relevant if the contract language itself is reasonably susceptible to that meaning. (*Id.* at p. 40.) Thus, extrinsic evidence cannot be used to show that when the parties said "Bunker Hill Monument" they meant "the Old South Church" or that when they said "pencils" they really meant "car batteries." (*Goode* v. *Riley* (1891) 153 Mass. 585 [28 N.E. 228, 228]; *Consolidated World Investments, Inc.* v. *Lido Preferred Ltd.* (1992) 9 Cal.App.4th 373, 379 [11 Cal.Rptr.2d 524].) The following two cases illustrate this point.

In the *Pacific Gas* case, defendant entered into a contract with plaintiff to repair plaintiff's steam turbine. Defendant agreed to " 'indemnify' " plaintiff " 'against all loss, damage, expense and liability resulting from . . . injury to property, arising out of . . . performance of this contract.' " (69 Cal.2d at p. 36, italics added.) During the repair, an exposed rotor of the turbine was damaged. Plaintiff sought indemnity from the defendant for the cost of repairing the rotor. The defendant offered to prove by admissions of plaintiff's agents, the parties' conduct under similar contracts and by other evidence that the parties intended the indemnity clause to cover injury to the property of third persons only, not to plaintiff's own property. The trial court refused to consider this evidence on the ground the "plain language" of the contract said "property" without any limitation and therefore covered plaintiff's property. (*Ibid.*) In reversing the judgment for plaintiff, the Supreme Court held it was error not to consider extrinsic evidence offered to show the contract was not intended to cover damage to the plaintiff's own property. The court concluded the language of the contract itself was reasonably susceptible to meaning only the property of third persons was covered by the

indemnity provision and although the extrinsic evidence offered by the defendant "was not necessary to show that the indemnity clause was reasonably susceptible of the meaning contended for by defendant, it was nevertheless relevant and admissible on that issue." (69 Cal.2d at p. 40.)

In contrast, in *Tahoe National Bank* v. *Phillips* (1971) 4 Cal.3d 11 [92 Cal.Rptr. 704, 480 P.2d 320], the trial court admitted extrinsic evidence to show an instrument entitled "Assignment of Rents and Agreement Not to Sell or Encumber Real Property" was intended as a mortgage and ordered foreclosure on the defendant's home. In reversing the judgment, the Supreme Court found the language of the document "cannot reasonably be construed as a mortgage and thus that extrinsic evidence, offered by plaintiff to prove the document a mortgage, is legally irrelevant and cannot support the judgment." (*Id.* at pp. 16-17, fn. omitted.)

■■■ In the present case, the provision principal and interest shall be "payable at the time of sale of the house" cannot reasonably be construed to mean principal and interest shall be "payable from the inception of the contract." Nor can a provision which says if interest is not paid at the time the house is sold it shall be compounded "thereafter" mean that if interest is not paid at the time the house is sold it shall be compounded "theretofore."

The Currys contend that in *Penzner* v. *Foster, supra*, 170 Cal.App.2d 106 the court construed contract language similar to that in the present case to provide for compound interest from the inception of the loan. The contract language in *Penzner* is not similar to the contract language in our case. The contract in *Penzner* was for a five-year note with "interest at the rate of eight per cent per annum from April 30, 1930, *payable semiannually*, and further provides that 'Should interest not be so paid it shall become part of the principal and thereafter bear like interest.' " (*Id.* at p. 108, italics added.) Thus, under the *Penzner* contract, interest was compounded on each semi-annual payment which went unpaid during the life of the note. In our case, there were *no* payments due during the life of the note. Rather, there was one lump sum payment due "at the time of sale of the house." Therefore, compound interest became due from that date forward.

Furthermore, extrinsic evidence of the parties' intent is not admissible to show that a loan bears compound interest. The reason for this rule is found in California Constitution, article XV, section 1, which provides in relevant part "interest shall not be compounded, nor shall the interest thereon be construed to bear interest unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith." As the Supreme Court explained in *McConnell* v. *Merrill Lynch, Pierce Fenner &*

*Smith, Inc.* (1983) 33 Cal.3d 816, 822-823 [191 Cal.Rptr. 458, 662 P.2d 916], "If we were to hold that a lending agreement unclear on its face as to whether compound interest would be charged could be explained by parol evidence of some borrowers' understanding, we would be doing violence not only to the express terms of [Cal. Const., art. XV, § 1], but also to its objectives. The section was designed to prevent the uncertainty inherent in the evaluation of such evidence." Thus, the very fact the Hubenthal note is ambiguous as to whether compound interest began to accrue from the inception of the loan is enough to defeat that interpretation.

The trial court therefore erred in determining the Currys were entitled to compound interest on the loan from January 1, 1981. The correct interpretation of the instrument is that the Currys were entitled to compound interest from the date of the foreclosure sale.

II.  *Neither Party Is Entitled to Attorney Fees.*

■   The Moody Group objects to the award of attorney fees to the Currys on the grounds the Currys' complaint did not allege the basis for such an award and the Moody Group had no obligation to the Currys under the Hubenthal note. The first argument has no merit because the Hubenthal note, containing an attorney fees provision was attached as an exhibit to the Currys' complaint and incorporated by reference. The second argument, however, does have merit.

The Moody Group argues the attorney fees provision in the Hubenthal note constituted a personal obligation of Hubenthal and did not bind the Moody Group, even if this action could be considered an action on the note, because the Moody Group was not a signatory to the note and there is no other basis for holding it liable under that instrument. The Hubenthal note provides in relevant part, "If action be instituted on this note I promise to pay such sum as the Court may fix as attorneys fees."

The trial court responded to this argument by reasoning: "Defendants are subject to the attorneys' fees provision notwithstanding the defendants were not signatories on the original note. Where a non-signatory has been sued on a contract as if he were a party to it, he is entitled to an award of attorneys' fees if he prevails. (*Reynolds Metal Company* v. *Alperson* (1979) 25 Cal.3d 124 [158 Cal.Rptr. 1, 599 P.2d 83]; *Steve Schmidt & Company* v. *Berry* (1986) 183 Cal.App.3d 1299 [228 Cal.Rptr. 689].)" The trial court then reasoned if the Moody Group would be entitled to attorney fees against the Currys the Currys must be entitled to attorney fees against the Moody Group. We disagree with the trial court's reasoning.

The trial court's underlying premise is wrong. The Moody Group was not "sued on a contract as if [it] were a party to it." The Currys' complaint did not plead a cause of action on the note. Rather, it pled causes of action for declaratory relief and to quiet title based on the forged reconveyance. The only significance of the Hubenthal note in this case is that it provides the measure of damages the Currys suffered as a result of the forged reconveyance. It is clear from the stipulation filed with the trial court that the parties viewed a money judgment as damages for the forged reconveyance and not damages for the Moody Group's defaulting on the Hubenthal note.

Furthermore, in reaching its conclusion the Currys were entitled to attorney fees, the trial court misread the decisions in *Reynolds Metal Co.* v. *Alperson* (1979) 25 Cal.3d 124 [158 Cal.Rptr. 1, 599 P.2d 83] and *Steve Schmidt & Co.* v. *Berry* (1986) 183 Cal.App.3d 1299 [228 Cal.Rptr. 689]. What the Supreme Court said in *Reynolds Metal* was that Civil Code section 1717 should be interpreted to "provide a reciprocal remedy for a nonsignatory defendant, sued on a contract as if he were a party to it, *when a plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the defendant.*" (25 Cal.3d at p. 128, italics added.) In other words if the *plaintiff* in the action would be entitled to attorney fees against the defendant, the mutuality provisions of Civil Code section 1717 entitle the defendant to attorney fees against the plaintiff, even though the defendant did not sign the contract. As the court explained, "Had plaintiff prevailed on its cause of action claiming defendants were in fact the alter egos of the corporation . . . defendants would have been liable on the notes. Since they would have been liable for attorney's fees pursuant to the fees provision had plaintiff prevailed, they may recover attorney's fees pursuant to section 1717 now that they have prevailed." (25 Cal.3d at p. 129.) Similarly, in the *Steve Schmidt* case, the court held the prevailing defendants were entitled to attorney fees against the plaintiff because the plaintiff, although not a signatory to the contract, would have been entitled to attorney fees against the defendants had he prevailed. (183 Cal.App.3d. at p. 1315.)

In the present case, the Currys have failed to suggest any legal or equitable theory under which the Moody Group could be held liable on the Hubenthal note. Indeed, as we noted above, the Currys have acknowledged throughout these proceedings the Moody Group is not obligated to them on the note.

It follows that because the Currys are not entitled to attorney fees against the Moody Group, the Moody Group cannot claim an entitlement to attorney fees against the Currys under Civil Code section 1717.

## DISPOSITION

The first paragraph of the judgment is modified by striking the award of attorney fees and providing plaintiffs are entitled to prejudgment interest in the sum of $39,825.25[1] and a total award in the sum of $59,025.25. In all other respects the judgment is affirmed. Appellants are awarded costs on appeal.

Lillie, P. J., and Woods (Fred), J., concurred.

---

[1]Calculated at the rate of 13 percent simple interest from January 1, 1981, to the sale of the house on August 19, 1992, and 13 percent compound interest from the sale of the house on August 19, 1992, to the date of trial.