Filed 8/24/22  R & J Sheet Metal v. Joseph Karscig CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| R & J SHEET METAL, INC.,<br><br>　　Plaintiff, Cross-defendant and Appellant,<br><br>　　v.<br><br>JOSEPH KARSCIG, INC.,<br><br>　　Defendant, Cross-complainant and Appellant. | B301918<br><br>(Los Angeles County Super. Ct. No. BC596858) |

　　APPEAL from a judgment and an order of the Superior Court of Los Angeles County, Monica Bachner, Judge.  Affirmed.

　　Law Offices of Alex P. Aghajanian, Alex P. Aghajanian, Gary P. Simonian; Benedon & Serlin, Gerald M. Serlin and Melinda W. Ebelhar for Plaintiff, Cross-defendant and Appellant.

　　Finch, Thornton & Baird, Jason R. Thornton and Scott M. Bennett for Defendant, Cross-complainant and Appellant.

———————————————

Cross-defendant and appellant R & J Sheet Metal, Inc. (R&J) was the subcontractor responsible for furnishing and installing sheet metal for a project for the City of Long Beach (the City). R&J purchased materials, including certain sheet metal panels and column covers, from cross-complainant and appellant Joseph Karscig, Inc., doing business as Architectural Systems, Inc. (ASI), which was the distributor but not the manufacturer of those materials. After the City observed rusting on certain panels supplied by ASI, R&J sued ASI, asserting breach of contract. More specifically, R&J alleged that ASI had failed to provide all the required materials and to tender to R&J required written warranty documentation for the materials. ASI filed a cross-complaint asserting breach of contract claims against R&J based on R&J's failure to pay for certain panels. ASI sought summary adjudication of its breach of contract claim and of R&J's breach of contract claim against ASI, which the trial court granted in ASI's favor. The trial court denied R&J's motion for reconsideration of the order based on new documents obtained from the manufacturer of the materials, finding that the new documents reflected facts already known to the parties. Following ASI's motion for attorney fees, the trial court awarded ASI $328,914 in fees, approximately $67,000 less than ASI requested, finding that the fees incurred were excessive.

R&J appeals the trial court's grant of summary adjudication of the breach of contract claims and the order denying its motion for reconsideration. ASI appeals the trial court's order on its motion for attorney fees. We conclude that there are no triable issues of material fact as to either R&J's or ASI's breach of contract causes of action and that the trial court properly granted judgment in ASI's favor. We further conclude

2

that the trial court did not abuse its discretion in denying R&J's motion for reconsideration or in reducing the amount of ASI's fee award.

Accordingly, the judgment and order of the trial court are affirmed.

## BACKGROUND

### A. The Project

In 2013, the City solicited bids for the construction of two buildings at the Port of Long Beach (the Project). W.E. O'Neil Construction Co. of California (WEO) was the general contractor that was awarded the Project. WEO selected R&J as the subcontractor for the furnishing and installation of sheet metal. WEO and R&J entered into the subcontract on September 30, 2013.

The Project called for sheet metal column covers and panels and specified that these materials were to be covered by a standard two-year manufacturer's warranty against material defects and a special panel finish warranty of 20 years. The Project specifications also provided that Centria Architectural Systems (Centria) was an acceptable manufacturer of these materials. ASI is an authorized distributor of Centria products.

### B. The Bidding Process

In response to a request from R&J, ASI submitted its first bid on April 25, 2013. Because the initial bid included engineering services, which R&J did not require, R&J requested a bid for only the materials, which ASI provided on September 20, 2013. The total bid price was approximately $225,000. This bid included bold text on the second page stating, "All warranties, express or implied, are excluded unless specifically noted above."

3

Under this text, the bid stated, "Centria warrants its material against defects in material and workmanship for a period of two year[s] from shipment. All other expressed and implied warranties are excluded." The bid also stated in bold text on the second page that that "All bids are good for 30 days" and similarly stated on the fourth page, "This proposal shall terminate thirty (30) days from date hereof."

On November 13, 2013, ASI submitted another bid to provide panels made by Centria and column covers made by a different manufacturer in exchange for approximately $150,000. This bid stated that "[a]ll warranties, express or implied, are excluded unless specifically noted above." With respect to the panels, the bid specified, "Centria warrants its material against defects in material and workmanship for a period of two year[s] from shipment," that "[a]ll other expressed and implied warranties are excluded," and that "[p]aint warranty must be reviewed and approved by Centria prior to order." With respect to column covers, the bid included a quote indicating that a certain type of finish would be used and provided that the "finish will be warranted with manufacturer's standard 20[-]year coastal warranty on a pass through basis." This bid contained the same note in bold text on the second page stating that "[a]ll bids are good for 30 days," as well as a statement on the fourth page that "[t]his proposal is valid for 30 days from the date of submission."

## C. R&J's First Order of Panels

Four months later, on March 13, 2014, R&J sent a purchase order for panels to ASI at a price of $71,703.56, which stated "20[-]year COASTAL finish warranty required." The order also stated that the figures provided were approximate and that ASI expected to provide a "final cut list" by April 11, 2014. The

4

order further requested that warranties be provided at the time of invoicing where applicable.

On April 23, 2014, R&J sent another purchase order to ASI for panels, specifying a price of $69,303.53, which was accompanied by a "final cut list." This purchase order once again noted, "20[-]year COASTAL finish warranty required." ASI responded with an acknowledgment dated April 23, 2014, which stated a price of $69,247.94, not including freight. This acknowledgment further provided, "Centria warrants its material against defects in material and workmanship for a period of two year[s] from shipment. All other expressed and implied warranties are excluded." On the final page of this form, above the line stating, "Confirmed and Accepted by," a representative of R&J stamped the document "APPROVED By Jesse Calvert at 5:14 pm, Apr 24, 2014." The materials covered by this acknowledgment were delivered and ASI was paid in full.

## D.   R&J's Order of Column Covers

R&J sent a purchase order for column covers to ASI on April 23, 2014, at a price of $102,275, including freight and a 20-year coastal finish warranty. On May 2, 2014, ASI responded with an acknowledgment that specified a price of $92,047.50, not including freight. In the description box, the acknowledgment stated, "see column cover notes for scope clarifications and exclusions." The notes stated: "Scope: [¶] 21 round columns with approx. sq.ft. noted below. The plans dated 1/11/13 as composed by AECOM and specification 07415 (revised) dated 10/4/13 shall serve as the basis for ASI material take off. [¶] Approx. 2,584 SF of Reynobond 4mm PE Core ACM Metal Panel Cladding with custom 3-coat finish . . . to be fabricated and shipped in units to the site for attachment to wall substrate by

5

others.  [¶]  ASI will provide requested submittal information for your use in determining that the material provided meets the specifications.  The customer is responsible for determining material quantities.  THIS IS NOT A 'PER PLANS AND SPECS' order."  The acknowledgment further provided that the finish on the panels "will be warranted with manufacturer's standard 20[-]year coastal warranty on a pass through basis."  This acknowledgment was stamped "APPROVED By Mike Stuver at 10:53 am, May 07, 2014" on the "Confirmed and Accepted by" line on the final page.  Stuver was R&J's Project Manager.

The column covers were delivered in two shipments dated August 8, 2014, and August 19, 2014.  Gregory Martinkus, R&J's Project foreman, testified that he signed the August 8, 2014, shipping list and that he believed he made the corrections on the left side of the page to show what had actually been received.  His corrections indicated that 12 vertical joint splices, which were accessories to the column covers, had been delivered.  With respect to the August 19, 2014, shipping list, Martinkus testified that he received the shipment and that everything on the packing list was there.  This included 48 vertical joint splices, which according to the slip constituted the "Balance of Vertical Joint Splices."

Michael Stuver, R&J's project manager, testified that although he did not count the number of joint splices received in the August 8, 2014, shipment, he assumed that Martinkus's notes correctly reflected the number of joint splices received in that shipment.  However, Stuver testified that the 48 vertical joint splices that were listed on the August 19 shipping list "did not make it to the job site."  According to Stuver, these were the only materials that R&J contends were not delivered by ASI.  In

6

an email sent months after the August shipments, on January 20, 2015, Stuver wrote to ASI that "[t]his project is missing the majority of the ACM channel filler piece at vertical joints." Stuver testified that this was the first time that R&J raised this issue with ASI and that there was no prior oral communication regarding missing joint splices. ASI responded to that email the following day requesting the quantity of joint splices received on August 8 and August 19, 2014 "as well as the amount you feel you require and why you feel the quantity sent will not fulfill your needs." ASI requested an expedited response "as it has already been 5 months since you received these items." Stuver testified that he responded to this email, but no response is included in the record. Martinkus also testified that "we didn't get enough" of the joint splices but conceded that "[s]ome may have been thrown away" or "lost."

## E. R&J's Second Order of Panels

In July 2014, R&J emailed ASI stating that the City wanted certain Centria panels that had fallen into the harbor to be replaced and communicated the types, quantities, and dimensions of panels needed. On July 28, 2014, ASI responded with an acknowledgment that specified a price of $36,092.21, not including freight. This acknowledgment, like the first acknowledgment, provided that "Centria warrants its material and workmanship for a period of two year[s] from shipment. All other expressed and implied warranties are excluded." Both pages of the acknowledgment were stamped "APPROVED By Mike Stuver at 5:09 pm, Aug 04, 2014," including on the "Confirmed and Accepted by" line.

On July 30, 2014, R&J submitted a change order form to WEO for the cost of the replacement panels. WEO rejected this

change order contending that R&J should be responsible for the cost of the replacement panels.[1] ASI delivered the replacement panels, and R&J installed them. In January 2015, WEO sent ASI a check for the replacement panels made payable jointly to ASI and R&J, which R&J did not endorse. It is undisputed that R&J has not paid this invoice and that ASI has not received payment from anyone else.

## F.    Issues With the Panels

In January 2015, the construction manager for the City observed evidence of rusting and pitting on certain of the panels and informed WEO. The City requested that R&J and Centria come to the site and provide a report on their findings. The City also contacted ASI and requested that a service representative come to the site and review the panels.

In February 2015, William Burt, president of ASI, informed the construction manager that ASI had not received payment for the replacement panels and would not provide warranty or close out documentation until ASI was paid in full.

On March 6, 2015, R&J emailed ASI concerning its request for warranties. ASI responded that it had not been paid in full for the materials provided and that, once payment was received, the warranties would be processed.

---

[1] There is an ongoing dispute between WEO and R&J concerning this issue and as to whether WEO, R&J or the City is responsible for the panels falling into the harbor.

However, at approximately the same time as this request,[2] ASI submitted a "Warranty Request Form" directly to Centria, providing the February 2015 date of substantial completion of the Project as required for the warranty to be effective. Notwithstanding that ASI had disclaimed all warranties for the panels other than the two-year material defect warranty, ASI also requested a 20-year finish warranty for the panels from Centria. After inspecting the panels, Centria determined that the panels had not been properly stored or protected on site prior to installation and that the finish would not be warranted in areas where the panels had dents or scratches. However, Centria stated that it would warrant the finish for the portions of the panels that were not damaged.

The City rejected this limited finish warranty from Centria. R&J offered a finish warranty in lieu of Centria's in order to close out the Project.

## G.    Procedural History

R&J filed its original complaint against WEO, the City, ASI and others on October 5, 2015. As to ASI, R&J alleged a cause of action for breach of contract based on ASI's alleged failure "to supply all of the required materials and refus[al] to tender to R&J the required material warranties." R&J's complaint and first amended complaint do not specify the contract ASI allegedly breached.

In December of 2015, ASI filed a cross-complaint against R&J and others, which it amended in April of 2017. In the

---

[2] ASI states in its briefing that this document was dated March 3, 2015, though this date does not appear on the face of the document.

amended cross-complaint, ASI alleged that the operative contract underlying the dispute was the acknowledgment from the second purchase of panels, which R&J had approved, and that the breach was R&J's failure to pay for those panels.

In October 2017, ASI provided R&J with separate written copies of (1) the two-year warranty for the Centria panels, (2) the two-year warranty for the column covers, and (3) the 20-year finish warranty for the column covers.  ASI filed a motion for summary adjudication against R&J and others on June 11, 2018.  ASI sought adjudication of its claim that R&J had breached the agreement by failing to pay for the second order of panels and of R&J's breach of contract claim against ASI for failure to supply the required materials and tender warranties.  R&J opposed the motion.  On October 31, 2018, the trial court granted ASI's motion for summary adjudication on its breach of contract cause of action against R&J in the cross-complaint and on R&J's breach of contract cause of action against ASI in its complaint.

On November 9, 2018, R&J filed a motion for reconsideration on the ground that R&J had obtained new facts relevant to whether ASI was contractually obligated to deliver a written warranty issued by Centria that covered paint finish on the panels for 20 years.  This new information consisted of three documents produced by Centria after the hearing on ASI's motion but before the court issued its order.  One of the three documents had already been produced during the litigation.  The other two documents consisted of a November 1, 2013, email thread between Centria and ASI about the pricing, specifications, and requested warranties for materials for the Project and a February 2015 email from ASI to Centria inquiring how R&J's warranty request should be handled.  The court denied the motion, noting

that, "[w]hile the documents may be new, the underlying facts asserted within them were already known by R&J and used by R&J in its opposition to ASI's motion for summary judgment." The court found that "[t]he facts presented seek to again demonstrate that ASI was contractually obligated to deliver a 20-year manufacturer's warranty regarding the paint finish on the panels from Centria because ASI, and by extension, Centria, could not expect its bid to be accepted if it did not conform to the project specifications," which constituted "the same arguments it made in the underlying motion."

On April 18, 2019, ASI filed a motion for attorney fees pursuant to Civil Code sections 1717 and 8558 seeking $382,811 from R&J, WEO and Continental Casualty Company (Continental), which had issued a payment surety bond in connection with the Project. After the court granted R&J's ex parte request for a continuance of the hearing on ASI's motion, ASI filed a second motion for attorney fees on May 21, 2019, in which it sought $396,218.50.

The trial court held that ASI was the prevailing party and that it was entitled to a reasonable fee award against R&J, WEO, and Continental. The trial court considered R&J's objection that certain fees incurred in connection with ASI amending its pleadings, its motions for summary adjudication,[3] entry of judgment, its fee motion, and ADR attempts were unreasonable and excessive and reduced ASI's fee award to $328,914, reflecting a reduction of approximately 17 percent of ASI's request. The trial court held that R&J, WEO and Continental were jointly and

_____

[3] ASI's first motion for summary adjudication was denied without prejudice due to insufficient notice.

11

severally liable for $299,443 of this total and that WEO and Continental were liable for the remaining $29,471.

R&J timely appealed the judgment and award of attorney fees and ASI timely cross-appealed from the order awarding attorney fees.

## DISCUSSION

### I. Motion for Summary Judgment

#### A. *Legal Principles*

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.)

"The interpretation of a contract is a judicial function. [Citation.] In engaging in this function, the trial court 'give[s] effect to the mutual intention of the parties as it existed' at the time the contract was executed. [Citation.] Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms." (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1125-1126.) "When the contract has been 'reduced to writing,' the parties' intention 'is to be ascertained from the writing alone, if possible,' subject to other rules of interpretation." (*Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1028.)

Summary judgment is proper when all the papers submitted on the motion show there are no triable issues of material fact, and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "[I]n moving

12

for summary judgment, a 'defendant . . . has met' his 'burden of showing that a cause of action has no merit if' he 'has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials' of his 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.' [Citation.]" (*Aguilar*, at p. 849.) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id*. at p. 850, fn. omitted.)

In reviewing an order granting a motion for summary judgment or summary adjudication, we apply the same de novo standard of review that applies to the granting of summary judgments. (*Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1471; see also Code Civ. Proc., § 437c, subd. (f)(2).) Our Supreme Court has described that standard as follows: " 'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] " 'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' " [Citation.] We liberally construe the evidence in

13

support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.  [Citation.]' [Citation.]"  (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 716-717.)

### B.     *Application*

#### 1.     *Contract at Issue*

The parties disagree as to the number of contracts formed between R&J and ASI and the terms of any contract between them.  R&J contends that ASI's proposal dated November 13, 2013, was accepted by R&J on March 13, 2014, and that the terms of that contract govern.  According to R&J, these terms include a 20-year finish warranty for the sheet panels.  In contrast, ASI argues that the November 2013 bid expired by its own terms after 30 days, and in any event, it did not include a 20-year finish warranty for the sheet panels.  Thus, according to ASI, the contracts between the parties were the three acknowledgments prepared by ASI that were approved by R&J, which do not provide for any such finish warranty.

We agree that the November 13, 2013, bid did not become the contract between the parties.  The California Commercial Code provides:  "Unless otherwise unambiguously indicated by the language or circumstances [¶] . . . [a]n offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances."  (Com. Code, § 2206, subd. (1)(a).)  Here, the unambiguous language of the bid shows that the bid expired before the purchase order was made.  The bid states that "[a]ll bids are good for 30 days" in bold text on the second page and "[t]his proposal is valid for 30 days from the date of submission" again on the fourth page.  Civil Code section 1587 provides that "[a] proposal is revoked by . . . [¶] . . .

14

[¶] . . . the lapse of the time prescribed in the proposal for its acceptance . . . ." (*Id.*, subd. (b).) Thus, the proposal was revoked after December 13, 2013.[4]

Contrary to R&J's contention, *Drennan v. Star Paving Co.* (1958) 51 Cal.2d 409 does not dictate that ASI be held to the terms of the November 13, 2013, bid. In *Drennan*, the plaintiff successfully made his bid to be the general contractor for a school construction project on the same day he had received a bid for paving work from the defendant subcontractor, relying upon the subcontractor's bid. (*Id.* at pp. 411–412.) The next day, the subcontractor informed the general contractor that it had made a mistake and could not do the paving for the price it had bid. (*Id.* at p. 412.) The court found that the subcontractor could not revoke its bid because the general contractor had reasonably relied upon it. (*Id.* at p. 414.) The court observed that the general contractor had "promptly informed [the] defendant that [the] plaintiff was being awarded the job and that the subcontract was being awarded to [the] defendant" and noted that if a general contractor delayed in accepting a subcontract, the outcome might be different. (*Id.* at p. 415.)

This case is distinguishable from *Drennan v. Star Paving Co.*, *supra*, 51 Cal.2d 409. There is no evidence that R&J "used [ASI's] offer in computing [its] own bid" or "bound [itself] to

---

[4] A provision in the bid stating that, for the goods that ASI was purchasing from Centria, "[p]ricing [is] good through shipment by 3/31/2014" and that the price would increase 3 percent per quarter thereafter does not support a reading that acceptance was invited through March 31, 2014. This language concerns pricing terms alone, not when or how acceptance was invited.

15

perform in reliance on [ASI's] terms." (*Id.* at p. 415.)  Rather, R&J entered its subcontract and material contract with WEO on September 30, 2013, *before* the November 13, 2013, bid that R&J argues should be considered part of the contract between the parties.[5]  Unlike the plaintiff in *Drennan*, R&J waited months after the bid's express expiration date before claiming reliance upon its terms.

Alternatively, R&J contends that the November 2013 bid must be read together with the panel and column cover agreements under Civil Code section 1642, which provides: "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."  "Civil Code section 1642 is simply one of the rules referred to in Civil Code section 1637 for aiding in the interpretation of a contract when the intent of the parties is otherwise doubtful." (*Ahern v. Asset Management Consultants, Inc.* (2022) 74 Cal.App.5th 675, 694, fn. omitted.)[6]  "Civil Code section 1642 ' "is most frequently applied to writings executed contemporaneously, but it is likewise applicable to agreements executed by the parties at different times if the later document is in fact a part of the same transaction." ' [Citation.]  [¶]  'Whether

---

[5] It would not have been reasonable to rely on ASI's original bid, dated April 25, 2013.  Like the November 13, 2013, bid, the original bid also stated, "[a]ll bids are good for 30 days" and "[t]his proposal shall terminate thirty (30) days from date hereof."

[6] Civil Code section 1637 provides:  "For the purpose of ascertaining the intention of the parties to a contract, if otherwise doubtful, the rules given in this Chapter are to be applied."

16

a document is incorporated into the contract depends on the parties' intent as it existed at the time of contracting.' [Citation.] ' " 'For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal . . . .' " ' [Citation.] 'The contract need not recite that it "incorporates" another document, so long as it "guide[s] the reader to the incorporated document." ' [Citation.] To be construed together, the separate instruments must be 'so interrelated as to be considered one contract.' [Citation.]" (*R.W.L. Enterprises v. Oldcastle, Inc.* (2017) 17 Cal.App.5th 1019, 1027–1028, italics omitted.)

R&J relies on *Holguin v. Dish Network LLC* (2014) 229 Cal.App.4th 1310 in arguing that the various documents circulated by the parties constitute a single contract as a matter of law. In *Holguin*, the defendants forfeited their contention that the trial court improperly instructed the jury using the singular "contract," when the defendants contended that there were multiple agreements at issue, as they failed to object to the jury instruction. (*Id.* at pp. 1319–1320.) The appellate court stated that, even if the argument had not been forfeited, the trial court's use of the singular "contract" was not erroneous where certain of the documents expressly referenced or incorporated by reference other documents. Further, the evidence at trial supported the finding that the initial order form signed by the plaintiffs was for a bundle of television services and the remaining documents were provided to the plaintiffs at the time their satellite television equipment was installed. (*Id.* at pp. 1320–1321.)

*Holguin v. Dish Network LLC*, *supra*, 229 Cal.App.4th 1310 is distinguishable from the present case. None of the agreements that were claimed to be part of the transaction in *Holguin* was an

17

offer that had lapsed. In this case, the mere reference to the Project in the acknowledgments from ASI did not clearly and unequivocally indicate that the parties intended to incorporate the terms of the November 2013 bid. Further, "[w]hether a writing is ambiguous is a question of law" (*Horning v. Ladd* (1958) 157 Cal.App.2d 806, 810), and we do not find the interpretation of the agreements to be "doubtful" such that recourse to Civil Code section 1642 is necessary to interpret them.

Even if Civil Code section 1642 did apply and an expired bid could properly be considered along with the contracts as part of the same transaction, it would be inappropriate to construe the parties' agreements to incorporate terms in earlier documents that the parties' later agreements directly contradict. "Where there is an inconsistency between two agreements both of which are executed by all of the parties, the later contract supersedes the former." (*Frangipani v. Boecker* (1998) 64 Cal.App.4th 860, 863.) The two later panel contracts expressly disclaim any warranty other than the two-year materials warranty and thus would override any prior statement that a 20-year finish warranty would be provided with respect to the panels.[7]

R&J's contention that extrinsic evidence supports reading an obligation to provide a 20-year finish warranty into the panel agreements also lacks merit. "[Extrinsic] evidence of the

---

[7] Notably, as ASI points out, the November 2013 bid did not provide for a 20-year finish warranty for the panels either, but instead disclaimed all implied or express warranties other than the two-year material and workmanship warranty and stated that "[p]aint warranty must be reviewed and approved by Centria prior to order."

meaning the parties gave to the contract language is only relevant if the contract language itself is reasonably susceptible to that meaning.  [Citation.]  Thus, extrinsic evidence cannot be used to show that when the parties said 'Bunker Hill Monument' they meant 'the Old South Church' or that when they said 'pencils' they really meant 'car batteries.' "  (*Curry v. Moody* (1995) 40 Cal.App.4th 1547, 1554.)  In other words, parol evidence is not admissible "to flatly contradict the express terms of the agreement."  (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1167.)

Thus, we reject R&J's arguments that a 20-year finish warranty must be read into the panel contracts.  We find that in determining whether the court properly granted summary adjudication in favor of ASI on its and R&J's breach of contract claims, the contracts at issue are (1) the first contract for panels entered into in April 2014, (2) the contract for column covers entered into in May 2014, and (3) the second contract for panels entered into in August 2014.

### 2. *Whether ASI Performed Under the Contracts*

To prevail on its motion for summary adjudication as to the breach of contract cause of action in the cross-complaint, ASI bears the initial burden of proving that it performed under the second panel contract and that R&J failed to perform.  To prevail on its motion for summary adjudication of R&J's breach of contract cause of action, ASI bears the initial burden of proving that it performed its obligations under all three contracts.

ASI has met its burden.  ASI has shown that the materials covered by the April 2014 panel contract were delivered, and ASI was paid in full.  Regarding the May 2014 column covers contract, while the initial shipment did not contain the number of

19

joint splices listed, the subsequent shipment stated that it contained the balance of joint splices. Martinkus personally reviewed the shipment and confirmed that it had the number of joint splices listed. As to the August 2014 panel contract, there is no dispute that ASI delivered the goods to R&J and that ASI has yet to receive payment for those goods.

The burden therefore shifts to R&J to show that a triable issue of one or more material facts exists as to both its and ASI's breach of contract claims or a defense thereto. R&J argues that ASI failed to fulfill its obligations under the contracts in two ways. First, R&J argues that even if ASI did not have to provide a 20-year warranty for the finish on the Centria panels, ASI had to furnish R&J in a timely manner with "physical documents" containing written copies of the other warranties, namely the two-year warranty that covered the materials and the 20-year warranty for the column cover finish. Second, R&J argues that ASI failed to provide sufficient materials under the column cover contract. We address these points in turn.

### a. *Failure to Provide Separate Written Warranty Documentation*

The panel contracts provide that "Centria warrants its material against defects in material and workmanship for a period of two year[s] from shipment," and the column cover contract provides that "[t]his finish will be warranted with manufacturer's standard 20[-]year coastal warranty on a pass through basis." There is no dispute that the contracts do not contain a provision stating that ASI must provide separate written warranty documentation. However, R&J contends that this should be an implied term of the parties' agreements.

20

Civil Code section 1655 provides: "Stipulations which are necessary to make a contract reasonable, or conformable to usage, are implied, in respect to matters concerning which the contract manifests no contrary intention."  Civil Code section 1656 provides:  "All things that in law or usage are considered as incidental to a contract, or as necessary to carry it into effect, are implied therefrom, unless some of them are expressly mentioned therein, when all other things of the same class are deemed to be excluded."

" 'Implied terms are not favored in the law, and should be read into contracts only upon grounds of obvious necessity.  [Citation.]  A court may find an implied contract provision only if (1) the implication either arises from the contract's express language or is indispensable to effectuating the parties' intentions; (2) it appears that the implied term was so clearly within the parties' contemplation when they drafted the contract that they did not feel the need to express it; (3) legal necessity justifies the implication; (4) the implication would have been expressed if the need to do so had been called to the parties' attention; and (5) the contract does not already address completely the subject of the implication.  [Citations.]' [Citations.]"  (*Grebow v. Mercury Ins. Co.* (2015) 241 Cal.App.4th 564, 578–579; see *Abers v. Rounsavell* (2010) 189 Cal.App.4th 348, 361 [" 'We do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there' "].)

The parties do not appear to dispute that the language of the panel contracts and column cover contract was sufficient to create enforceable express two-year warranty for the materials and a 20-year warranty for the column cover finish.  It is also

21

undisputed that no claim was made against any warranty covered by the two panel contracts or the column cover contract, and there is no evidence that, had R&J sought to enforce a warranty prior to receiving the written warranty documentation in 2017, it would have been unable to do so. R&J does not point to evidence in the record supporting that it was an established custom in the industry to provide separate written warranty documentation or that separate written warranty documentation was necessary to effectuate the intention of the parties.

R&J contends that an obligation to provide separate written warranty documentation can be inferred from the fact that the City was the ultimate customer and that it should be assumed that the City would want such documentation given the cost of the project. " ' "[W]hen opposition to a motion for summary judgment is based on inferences, those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork." [Citation.]' [Citation.]" (*Annod Corp. v. Hamilton & Samuels* (2002) 100 Cal.App.4th 1286, 1298–1299.) There is no evidence to show that the City expected separate written warranty documentation. Rather, it appears that the City believed that it could enforce a warranty without any separate written documentation of that warranty, as evidenced by the fact that it raised rusting issues that it believed were covered by a finish warranty to ASI.

The trial court supported its conclusion that there was no breach by finding that ASI ultimately provided the separate written warranty documentation in October 2017 and that "R&J did not cite to on-point case law or authority to suggest ASI had to provide the warranties within a reasonable time after

22

substantial completion of the project." However, "[w]here no time limit is specified for the performance of an act, a reasonable time is allowed." (*Consolidated World Investments, Inc. v. Lido Preferred Ltd.* (1992) 9 Cal.App.4th 373, 381.) "What constitutes a 'reasonable time' for performance is a question of fact." (*Henry v. Sharma* (1984) 154 Cal.App.3d 665, 669, 670.) Factual questions may only "be decided as a question of law if, under the undisputed facts, there is no room for a reasonable difference of opinion." (*Powell v. Standard Brands Paint Co.* (1985) 166 Cal.App.3d 357, 363.) We cannot conclude that there is no room for a reasonable difference of opinion as to whether providing written warranty documentation in October 2017, after the two-year material warranty expired, was within a reasonable time. Nevertheless, we agree with the trial court's further conclusion that "ASI was not required to provide a physical warranty and 'the materials are warranted by the manufacture [*sic*] against defects in material and workmanship for a period of two years regardless of whether any physical warranty documentation is delivered by ASI.' "

Because failure to provide separate written warranty documentation was R&J's only defense to its failure to pay ASI under the second panel contract, we affirm summary adjudication in favor of ASI on its breach of contract claim in the cross-complaint. Moreover, R&J's only claim for breach as to the panel contracts was ASI's failure to provide separate warranty documentation under them. Thus, summary adjudication of R&J's claim for breach of contract as to two of the parties' three agreements must also be affirmed. We consider next whether R&J can succeed on its claim for breach of contract as to the column cover agreement.

### b. *Failure to Provide Sufficient Column Cover Materials*

R&J asserts that ASI failed to perform its obligations under the column cover contract because it failed to supply sufficient materials. In their briefing below and on appeal, the parties did not tie their contentions concerning a breach of contract due to a failure to deliver sufficient joint splices to any specific language in the contract. As R&J acknowledges, the parties' agreement "did not list individual pieces as the order for panels had done"—in other words, the contract did not state a specific quantity of joint splices or other materials that ASI was obligated to provide in connection with the column cover contract. Rather, the contract provided for, among other things, an approximate square footage of "Metal Panel Cladding"; that "ASI will provide requested submittal information for [R&J's] use in determining that the material provided meets the specifications"; that "[t]he customer is responsible for determining material quantities"; and that "THIS IS NOT A 'PER PLANS AND SPECS' order."

Stuver testified that the only materials that were purportedly not delivered by ASI were the 48 joint splices listed on the August 19, 2014, packing slip that "did not make it to the job site." Stuver did not testify that he personally inspected the August 19 shipment. However, Martinkus did. Martinkus testified that he performed a review of the August 19 shipment of panels "to see, if what was listed on the packing list, was actually there" and agreed that "everything listed on the packing slip [was] actually there." Notwithstanding that the testimony of R&J employees supports the conclusion that all the materials were in fact delivered, R&J continues to assert that there was a

24

breach of contract because the amount received was not sufficient to complete the project. Martinkus conceded that some joint splices may have been lost or thrown away but asserted that even if that were not the case, there were not enough joint splices to complete the project. The declaration of William Burt, to which R&J objected on evidentiary grounds below, asserted instead that the quantity of joint splices that ASI provided to R&J was sufficient.

Even disregarding Burt's assertions as to the sufficiency of the joint splices provided, R&J has failed to create a material dispute of fact as to whether ASI met its obligations under the contract. The column cover agreement stated that R&J must determine the materials required and the record before us does not show that R&J ever communicated that quantity it ultimately required to ASI. Five months after receiving the two shipments of column cover materials, and approximately two weeks before the Project's substantial completion date of February 2, 2015, R&J asserted in an email to ASI that "[t]his project is missing the majority of the ACM channel filler piece at the vertical joints." The record does not reflect any response to ASI's request that R&J provide the number of joint splices it received as well as the amount it believed were required to complete the project. R&J argued below and again on appeal that ASI refused to provide the splices needed to complete the installation, but it failed to identify any evidence showing the quantity of joint splices that were requested from ASI or evidence that ASI refused to provide those materials. The only evidence cited in support of ASI's claimed refusal to supply the materials

required is R&J's own response to an interrogatory, on which it cannot rely.[8]

In the absence of evidence that R&J communicated the further materials it required under the column cover contract to ASI, R&J's bare assertion that the number of joint splices received was insufficient to complete the Project does not create a dispute of material fact as to whether ASI breached the contract. Accordingly, we affirm the trial court's order granting summary adjudication in favor of ASI on R&J's breach of contract claim under the column cover contract.

## II.     Motion for Reconsideration

R&J argues that the trial court erred in rejecting its motion for reconsideration of the summary adjudication ruling. We find no error and affirm.

Pursuant to Code of Civil Procedure section 1008, subdivision (a), a motion for reconsideration must be based on "new or different facts, circumstances, or law."[9] We may review an order denying a timely motion for reconsideration on appeal

---

[8] "At the trial or any other hearing in the action, so far as admissible under the rules of evidence, the propounding party or *any party other than the responding party* may use any answer or part of an answer to an interrogatory *only against the responding party. . . .*" (Code Civ. Proc., § 2030.410, italics added.)

[9] When a motion is based on new facts or circumstances, the moving party must satisfactorily explain why he did not earlier produce the new evidence. (*Lucas v. Santa Maria Public Airport Dist.* (1995) 39 Cal.App.4th 1017, 1027.) R&J's delay in obtaining this evidence was not discussed in the tentative order or during oral argument, from which we may infer that the trial court found R&J's explanation for its delay to be satisfactory.

from the underlying order or judgment.  (See *Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1457–1458.)  "An abuse of discretion standard applies to a court's denial of a motion for reconsideration."  (*Hudson v. County of Los Angeles* (2014) 232 Cal.App.4th 392, 408.)

One of the three documents that R&J cited as new evidence in its motion had already been produced during the litigation.  The other two documents consist of a November 1, 2013, communication between Centria and ASI about the Project and a February 2015 communication between ASI and Centria in which ASI inquired how it should handle the 20-year warranty request that R&J submitted.  Both documents were relied upon as evidence that ASI and Centria were aware that the Project required a 20-year finish warranty.  The trial court concluded that while those two "documents may be new, the underlying facts asserted within them were already known by R&J and used by R&J in its opposition to ASI's motion for summary adjudication."

R&J argues that this conclusion was error, relying on *Film Packages, Inc. v. Brandywine Film Productions, Ltd.* (1987) 193 Cal.App.3d 824.  In *Film Packages, Inc.*, the respondent made several attempts to obtain a right to attach order:  (1) an application that was denied; (2) a motion for reconsideration that was denied; and (3) seven months later, after additional discovery was completed, a successful *renewed* motion.  (*Id*. at p. 826.)  The renewed motion, which was the subject of the decision, was made pursuant to Code of Civil Procedure former section 1008, subdivision (b), which provided that when a party "makes a subsequent application for the same order upon an alleged different state of facts, it shall be shown by affidavit . . . what

27

new facts are claimed to be shown." (See *Film Packages, Inc.,* at p. 827.) The Court of Appeal considered whether the trial court could properly consider the renewed application "absent a showing of any facts materially different from those presented on a prior denied application" and held that it could. (*Id.* at p. 826.) Even though the plaintiff did not make a showing of any facts materially different from those presented in its prior denied application, the trial court held that "new evidence of the meaning of those facts was produced" and that the new depositions "shed new light on the case" and "provided 'many subtle nuances and subjective impressions.' " (*Id.* at p. 829.) Thus, the appellate court found that "new information was made available." (*Ibid.*) The court further found that "[w]hile it may be error to reconsider a previous final order under [Code of Civil Procedure] section 1008, subdivision (a), where there is no showing of newly discovered evidence [citation], apart from that subdivision a trial court, in a still pending action, is generally vested with discretion to grant a renewed motion based on a fuller statement of facts previously furnished." (*Id.* at p. 830.)

*Film Packages, Inc. v. Brandywine Film Productions, Ltd.*, *supra*, 193 Cal.App.3d 824 does not compel the conclusion that the trial court here abused its discretion by failing to grant R&J's motion for reconsideration. Indeed, *Film Packages, Inc.* suggests that it would be an abuse of discretion to grant a motion for reconsideration brought under Code of Civil Procedure section 1008, subdivision (a), such as R&J's motion in this case, based only upon new light shed on known facts.

Moreover, the trial court's opinion here indicates that the new documents did not cast circumstances in a new light or provide any "subtle nuances" in its view. Rather, the trial court

28

found the information in the new documents to be immaterial to its determination.  (See *New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 214 [immaterial facts cannot support a motion for reconsideration].)  The trial court stated that the November 1, 2013, communication reflecting knowledge of the Project's specifications was ultimately irrelevant because a later email from ASI to R&J stated that Centria could not provide the desired warranty.  Similarly, the trial court observed that the February 2015 request from ASI to Centria did not support R&J's conclusory allegation that ASI never intended to exclude the finish warranty.  Rather, it demonstrated that ASI received R&J's request for a 20-year warranty and inquired how to proceed.  We find no obvious showing of abuse in these conclusions and therefore affirm the trial court's denial of the motion for reconsideration.

## III.   Motion for Attorney Fees

On cross-appeal, ASI contends that the reductions the trial court made to ASI's request for $396,218.50 in attorney fees constituted reversible error.  We disagree and affirm.

An order granting an award of attorney fees is generally reviewed for an abuse of discretion.  (See *MHC Financing Limited Partnership Two v. City of Santee* (2005) 125 Cal.App.4th 1372, 1397.)  In particular, "[w]ith respect to the amount of fees awarded, there is no question our review must be highly deferential to the views of the trial court," since "an experienced trial judge is in a much better position than an appellate court to assess the value of the legal services rendered in his or her court."  (*Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 777, 782; see also *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [recognizing trial court's broad

29

discretion in determining amount of reasonable attorney fees because experienced trial judge is in the best position to decide value of professional services rendered in court].)  An appellate court will interfere with a determination of "what constitutes the actual and reasonable attorney fees" "only where there has been a manifest abuse of discretion" (*Fed-Mart Corp. v. Pell Enterprises, Inc.* (1980) 111 Cal.App.3d 215, 228) that "shocks the conscience or is not supported by the evidence" (*Jones v. Union Bank of California* (2005) 127 Cal.App.4th 542, 550).

ASI challenges the trial court's reduction of its requested fees in connection with its two motions for summary adjudication, the first of which was denied without prejudice due to insufficient notice.  ASI contends that the court determined that the fees for the two motions were duplicative even though R&J in its second opposition raised "an array of novel factual and legal arguments not raised in its first opposition."  However, the trial court's order acknowledged that, "in addition to incorporating the first [motion for summary adjudication's] arguments, the second [motion for summary adjudication] involved additional issues . . . and preparing replies to new arguments raised by [c]ross-[d]efendants in opposition."  It nevertheless found it appropriate to reduce the $60,623 requested by ASI in connection with both motions by $27,655, or approximately 45 percent.  We do not find this reduction to exceed the bounds of reason, particularly as it is undisputed that there would have been no second motion had the first motion been sufficiently noticed.

ASI similarly challenges reductions to the fees incurred in preparing its fee motion and in its settlement efforts.  The trial court found the $36,905 in fees incurred in connection with the fee motion to be excessive and reduced the fees to $18,000.  The

trial court also reduced the $35,196 in fees incurred engaging in ADR to $20,196 on the grounds that the fees were excessive, though not incurred in bad faith. ASI contends that its requested fees were necessary and reasonable and that the trial court's reductions were "[b]izarre[ ]" and "penalized ASI." We disagree.

"[T]he trial court has wide discretion in making reductions based on its estimate of time spent on activities that are noncompensable in whole or in part." (*Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 64.) Here, the trial court cited clear examples of what it found to be excessive amounts of time spent on activities such as preparing charts for the fees motion and preparing mediation briefs. The mere fact that the trial court did not award ASI the full figure sought does not mean that it acted irrationally or punitively. "[C]ounsel 'are not automatically entitled to all hours they claim in their request for fees. They must prove the hours they sought were reasonable and necessary.' " (*Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1320.) We do not find the trial court's conclusion that ASI had not shown all its hours to be reasonable or necessary to be beyond the bounds of reason.

In sum, we will not substitute our own opinion for the evaluation made by the experienced judge who presided over the proceedings below for years. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [" 'The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its

opinion and thereby divest the trial court of its discretionary power' "].)[10]

## DISPOSITION

The judgment and order are affirmed.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED


CHANEY, J.


We concur:



ROTHSCHILD, P. J.            BENDIX, J.

------

[10] R&J also contends that the cross-appeal must be dismissed because WEO and Continental were not served with the briefs despite being necessary parties to the appeal because they have a " 'vital and real interest' " in the issue of attorney fees.  However, the only case upon which R&J relies to assert that WEO and Continental are necessary parties, *Slaughter v. Edwards* (1970) 11 Cal.App.3d 285, is distinguishable as it did not involve jointly and severally liable defendants, against which a plaintiff is typically "entitled to pursue . . . claims in separate actions."  (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 822.)  We have not located, nor has R&J directed us to, any case in which jointly and severally liable defendants were held to be necessary parties to an appeal such as this one.  Further, as we have found that the trial court did not abuse its discretion in its attorney fees award, there is no need to speculate about the indirect effects on WEO and Continental of an increased award as to ASI.